*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



# OPINION

No. 04-11-00731-CV

**ESTATE OF WILBUR WALDO LYNCH**, Deceased

From the County Court at Law, Kendall County, Texas
Trial Court No. 05-090-PR
Honorable Bill R. Palmer, Judge Presiding

Opinion by:     Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  October 17, 2012

REVERSED AND REMANDED

        This is the second appeal considered by this court in relation to a will contest involving

the Estate of Wilbur Waldo Lynch.  In the first appeal, this court upheld the jury's verdict that:

(1) Waldo lacked testamentary capacity and was unduly influenced when he executed a will in

2003; and (2) Tracy Lynch, Waldo's daughter who was the executrix named in the 2003 will, did

not act in good faith when she defended the contest of the will.  In the current appeal, we review

issues related to whether the attorney's fees and expenses paid by Tracy in defending the 2003

will can be recovered by Waldo's Estate.  Specifically, Peggy Lynch Sackheim and Patricia

Lynch Alderman challenge the probate court's order denying their motion for an order

establishing the amount of money that Tracy is required to reimburse Waldo's Estate for

attorneys' fees and expenses that Tracy caused Waldo's Estate to pay out in defending the will contest. Peggy and Patricia challenge the probate court's conclusions that this right to reimbursement has been waived or is barred by res judicata. They also challenge the probate court's determinations that the court lacked jurisdiction or plenary power to enter an order determining the amount to be reimbursed and that the accounting filed by Tracy was in compliance with section 149A of the Texas Probate Code. We reverse the trial court's order and remand the cause to the trial court for further proceedings to determine the amount of money Tracy is required to reimburse Waldo's Estate.

### PROCEDURAL BACKGROUND

Wilbur Waldo Lynch and Bobbie Lynch were the parents of Tracy, Peggy, and Patricia. Tracy was named as the independent executrix of Bobbie's estate in 2000 and was named as independent executrix under a will executed by Waldo in 2003 before his death in 2005. Peggy and Patricia pursued actions against Tracy in relation to both estates, including a will contest challenging the 2003 will in Waldo's Estate.

Before the jury trial on the will contest that preceded the first appeal, Peggy and Patricia filed a motion to sever on May 12, 2009. In that motion, Peggy and Patricia asked the probate court to sever the trial of the will contest from the trial of the claims relating to the administration of Waldo's Estate, such as their claims for an accounting and for Tracy's removal for cause as independent executrix. At that time, Peggy and Patricia had pending: (1) an objection to inventory, appraisement and list of claims; (2) a motion to compel an accounting; and (3) a motion for Tracy's removal. On May 29, 2009, the probate court signed an order granting the motion to compel an accounting, and Tracy filed an accounting on June 8, 2009.

On June 16, 2009, the probate judge sent the attorneys an email stating:

> As to Mr. Odom's [attorney for Peggy and Patricia] June 15th letter as to Plaintiffs' Motions:
> 1)    I will have a ruling out on "Motion to Compel Discovery Responses" by this Friday;
> 2)    "Motion for Removal" and "Objection to Inventory" will not be heard until after the July 13th trial;
> 3)    Please tell me the basis for the "Motion to Sever" so I can determine if a hearing is needed prior to trial.

On June 19, 2009, Peggy and Patricia filed an amended motion to sever, adding a request for the severance of their claim for tortious interference with inheritance rights and stating that the accounting had also been objected to as inadequate. The motion asserts:

> The accounting needs to be reviewed and ruled upon by the Court as the information Defendant has furnished to date shows that Tracy Lynch has not been forthcoming with true and accurate information, including the money which she has taken from Waldo during his life and the Estate after his death. Likewise, Tracy Lynch needs to be deposed on the accounting. This naturally affects the claims requested to be severed.

The motion prayed that the probate court sever the will contest from the causes of action for an accounting, Tracy's removal, and tortious interference with inheritance rights. Tracy filed an objection to the amended motion to sever, stating:

> Plaintiffs [sic] claims for removal and objections to the accounting are matters that will be heard after the trial on the merits and do not need to be severed from this action. Defendant moved to strike Plaintiffs' claim for tortious interference as it was non-suited and then refiled after limitations had run on such claim. To the extent that such claim is still viable, which is denied, such claim is inextricably intertwined with Plaintiffs' claims of undue influence and cannot be severed into a whole new lawsuit without prejudicing Defendant.

Unlike her response that the tortious interference claim could not be severed, as to the accounting matter, Tracy argued that matter was to be heard after the trial. The probate court signed an order denying the amended motion to sever on June 24, 2009.

On July 10, 2009, Peggy and Patricia filed their first set of objections to the accounting

Tracy filed in Waldo's Estate and for a reconsideration of the severance issue. That same day,

the probate court also ruled on Tracy's motion in limine and granted her request to exclude the

following:

> Any reference to, testimony, or evidence of Plaintiffs' complaints, objections and/or challenges to the Inventory, First Amended Inventory, Second Inventory, and Accounting submitted by Defendant in connection with the Estate of Wilbur Waldo Lynch. Any such evidence is mere allegations on the part of Plaintiffs and their counsel and is speculative, conjecture, and not probative of any issue in this case, particularly, because any proceedings on Plaintiffs' motion for removal of Defendant as the Independent Executrix and *their objections to the Accounting and Inventory have been abated until after the conclusion of the trial of the merits*.

(emphasis added).

The case proceeded to trial on July 13, 2009. In response to the questions submitted, the

jury found: (1) Wilbur Waldo Lynch lacked testamentary capacity and was unduly influenced by

Tracy; (2) Tracy did not act in good faith and with just cause in defending the 2003 will; (3)

Peggy and Patricia acted in good faith and with just cause in prosecuting the application for the

2001 will and in contesting the 2003 will; (4) the reasonable and necessary fees and expenses for

Tracy's attorneys for preparation and trial were $606,523.00; and (5) the reasonable and

necessary fees and expenses for Peggy's and Patricia's attorneys for preparation and trial were

$770,000.00.

On August 25, 2009, the probate court held a hearing on a motion to enter judgment,

motion to sever the will contest, and motion for judgment notwithstanding the verdict. With

regard to the reimbursement of Waldo's Estate by Tracy, the judgment signed by the probate

court provided:

> **ORDERED, ADJUDGED AND DECREED** by the Court that Defendant/Proponent Tracy June Lynch reimburse to the Estate of Wilbur Waldo

Lynch, all attorney's fees and expenses that she caused to be paid out of or from monies belonging to the Estate of Wilbur Waldo Lynch in connection with the defense of the will contest regarding the "2003 will" in her capacity as independent executor of the Estate of Wilbur Waldo Lynch based on the Jury's answer to Question No. 3 regarding her lack of good faith and just cause in defending the will contest and pursuant to Tex. Prob. Code § 243.

The probate court also granted the motion to sever and ordered "The cause of action asserted by Plaintiffs Peggy Sackheim and Patricia Alderman, as to the will contest of the April 8, 2003 will, resulting in a final judgment signed August 25, 2009, is severed from this administration and made the subject of a separate action having docket number 05-090-A-PR."

The probate court later held a hearing on Tracy's motion for new trial and several motions filed by Peggy and Patricia. One of the motions filed by Peggy and Patricia requested the probate court to order Tracy to return $20,739.75 to Waldo's Estate for a payment she made to one of her attorneys the day after the jury's verdict but before the judgment was signed. Tracy's attorney objected, asserting that the judgment ordered Tracy to reimburse Waldo's Estate for attorneys' fees that she paid out while she was the independent executor, and the payment was covered by the judgment. Tracy's attorney further argued:

> I think the biggest issue that we haven't discussed in detail is the potential conflict between coming in on each payment that was made out and the judgment that's already been entered that covers all the payments that she made out of the estate for attorney's fees. It's covered. It's already there. They already have that judgment, but it isn't final yet [pending on appeal]. And for the — on the same basis, judicial economy would not be served by coming in and having a hearing on each of the — however many payments there were during this lengthy litigation process.

The probate court denied the motion regarding the $20,739.75 payment, but ordered Tracy to turn over all of the attorneys' fees statements and checks written to attorneys from any account she used to write checks to the attorneys representing Bobbie's Estate, Waldo's Estate, or her.

On December 1, 2009, the probate court signed an agreed order appointing a special master to conduct a comprehensive accounting as to both estates. The special master submitted his report on March 29, 2010. The probate court subsequently held a hearing on Peggy and Patricia's motion to approve the special master's report and signed an order approving the report. In the report, the special master determined that $848,993.36 had been spent by Tracy from both estates on attorneys' fees. The special master also determined the accounts for the two estates had been commingled, precluding a finding on the exact amount spent separately by each estate.

After receiving the special master's report, Peggy and Patricia filed a "Motion For Order Declaring the Sum Tracy June Lynch Must Reimburse the Estate for Legal Services Paid in Bad Faith and to Fix the Date of Payment." The motion urged that Tracy be required to reimburse the entire $848,993.36 in attorneys' fees to Waldo's Estate since she was unable to render any other accounting of the amount to be reimbursed. At the hearing on the motion, the probate court questioned why the amount to be reimbursed had not been found by the jury.

On July 15, 2010, Peggy and Patricia filed a "Motion to Compel an Accounting of the Attorneys Fees and Other Expenses Paid from the Estate of Wilbur Waldo Lynch (pursuant to § 149A, Texas Probate Code)." In the motion, Peggy and Patricia asserted that based on the special master's report, one-half of the $848,993.36 of the total attorneys' fees expended by both estates should be allocated to each estate, or $424,496.68. After reviewing the attorneys' fees invoices, Peggy and Patricia contended that the total amount expended by both estates with regard to the will contest was $717,348.85. At the hearing on the motion, the probate judge asked whether the motion was requesting that he provide an amount that the jury was not asked to find. Peggy and Patricia's attorney responded that the amount expended from Waldo's Estate

in the will contest proceeding could only be determined by the accounting which was not finalized before the jury trial.

On September 17, 2010, Peggy and Patricia filed a motion requesting the probate court to reconsider its prior orders denying their requests for the probate court either to determine the amount Tracy was required to reimburse Waldo's Estate or to compel Tracy to provide an accounting of the amount. At the hearing on the motion, Peggy and Patricia's attorney reminded the probate court that when the will contest was tried, "any of the accounting issues were held back, were reserved, until after the judgment on the will contest." The probate court asked more questions about the jury charge and raised a concern regarding res judicata; however, the probate court subsequently signed an order requiring Tracy to supplement her accounting "to state what amount of money was expended from the Estate for Attorney fees during the time she was Independent Executor."

Eventually, Tracy filed a response to the probate court's order, stating she was unable to comply with the order because it was impossible to determine with any certainty the amount of money expended by Waldo's Estate in connection with the defense of the will contest. On February 10, 2011, the probate court issued an order requiring Tracy to show cause why she should not be held in contempt of court.

On March 31, 2011, Peggy and Patricia filed a motion requesting the probate court to enter an order declaring that Tracy was required to reimburse Waldo's Estate $734,305.22 for money spent in defense of the will contest. On April 28, 2011, after this court's opinion issued in the first appeal on April 20, 2011,[1] the probate court held a contempt hearing at which it

---

[1] *See In re Estate of Lynch*, 350 S.W.3d 130, 133 (Tex. App.—San Antonio 2011, pet. denied) (*Lynch I*). In *Lynch I*, we affirmed the probate court's judgment that: (1) voided Waldo's 2003 will based on the jury's findings of lack of testamentary capacity and undue influence; (2) awarded Peggy and Patricia attorneys' fees and expenses; (3) denied Tracy payment of any attorneys' fees or expenses based on the jury's findings that she had not acted in good faith or

denied the request to hold Tracy in contempt. At the hearing, the probate court requested that the parties brief whether a determination of the reimbursement amount was barred by the failure to obtain a jury finding on the amount. Both parties submitted briefs to the probate court with regard to this issue.

On August 25, 2011, the probate court conducted a hearing. At the conclusion of the hearing, the probate court verbally announced its findings and concluded that any effort to establish the reimbursement amount was barred by res judicata; therefore, the probate court approved the accounting previously filed by Tracy. Subsequently, the probate court signed written findings of fact and conclusions of law that included findings and conclusions that: (1) Peggy and Patricia waived their right to obtain a finding on the amount to be reimbursed; (2) the amount to be reimbursed was an issue in the will contest and efforts to establish the amount were barred by res judicata; (3) the probate court was without jurisdiction to modify the prior judgment; (4) the earlier severance of issues by the probate court did not prevent Peggy and Patricia from presenting evidence regarding the amount expended by Waldo's Estate to defend the will contest; and (5) the issue of the reimbursement amount was not reserved from the jury trial.

### STANDARD OF REVIEW

The issues raised on appeal challenge the trial court's findings of fact and conclusions of law. If a trial court makes findings of fact and conclusions of law, we may review the fact findings for legal and factual sufficiency. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). If there is more than a scintilla of evidence to support the finding, the no-evidence challenge fails. *Id.* at 795. Evidence is factually insufficient to support a finding if the

---

with just cause in defending the 2003 will; (4) ordered Tracy to reimburse the Estate all attorneys' fees and expenses that she caused to be paid out of the Estate money in connection with the defense of the 2003 will; (5) admitted a 2001 will to probate; and (6) appointed Peggy and Patricia co-executrixes under the 2001 will. *Id.*

finding is so against the great weight and preponderance of the evidence as to be clearly wrong or unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We review *de novo* the trial court's legal conclusions based on the findings of fact to determine their correctness. *BMC Software Belgium, N.V.*, 83 S.W.3d at 794. If we determine a conclusion of law is erroneous but the trial court nevertheless rendered a proper judgment, the erroneous conclusion does not require reversal. *Id.*

## WAIVER

In their first issue, Peggy and Patricia challenge the probate court's conclusion that they waived their right to obtain a determination of the amount Tracy was required to reimburse Waldo's Estate. They assert: (1) obtaining the determination was a right belonging to Waldo's Estate, not their right, so Tracy, as the executor at the time of trial, had the duty to request a jury question as to the amount expended; (2) the issue of the amount of the reimbursement was reserved before the trial on the will contest because the final accounting was necessary before the amount could be determined; therefore, no evidence could have been presented on the issue. Tracy responds: (1) Peggy and Patricia had the duty to tender a jury question or object to its omission from the charge; (2) Peggy and Patricia could have requested the finding post-trial after they had been appointed independent executrixes, but they invited the error by requesting the severance instead; (3) the probate court did not reserve or sever the issue regarding the amount of the reimbursement and could not sever the issue from the will contest; (4) evidence was presented regarding the amount of attorneys' fees expended, but Peggy and Patricia did not request that portion of the reporter's record from the trial to be prepared.

"Waiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d

773, 778 (Tex. 2008). The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right. *Id.* Although waiver is generally a question of fact, it becomes a question of law "when the surrounding facts and circumstances are undisputed." *In re General Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006) (quoting *Jernigan v. Langley*, 111 S.W.3d 153, 156-57 (Tex. 2003)). "In determining if a waiver has in fact occurred, the court must examine the acts, words or conduct of the parties, and it must be 'unequivocally manifested' that it is the intent of the party to no longer assert the right." *Enterprise-Laredo Associates v. Hachar's, Inc.*, 839 S.W.2d 822, 836 (Tex. App.—San Antonio 1992), *writ denied*, 843 S.W.2d 476 (Tex. 1992).

## A. Did the Failure to Obtain a Jury Finding Regarding the Reimbursement Amount Result in Waiver?

At the August 25, 2011 hearing, the probate court explained what appears to be the basis for its waiver finding as follows:

> As to the final judgment of August 25th, 2009, the final judgment, at page 4, orders that Tracy Lynch reimburse the estate for all attorneys' fees and expenses paid out of the estate for defense of the 2003 will, based on the answer to jury question number 3. There was no jury question requested as to what that amount would be if answered in favor of Ms. Sackheim and Ms. Alderman.

The probate court's explanation is premised on actions taken by Peggy and Patricia during trial. During trial, however, Peggy and Patricia were not the representatives of Waldo's Estate. Tracy was. Moreover, the judgment does not award the right of reimbursement to Peggy and Patricia. Instead, that right is awarded to Waldo's Estate.

As previously noted, waiver occurs only where the party holding the right relinquishes the right or "unequivocally manifests" an intent to no longer assert the right. *See Ulico Cas. Co.*, 262 S.W.2d at 778. Since the right of reimbursement was held by Waldo's Estate, no action

taken by Peggy and Patricia with regard to the jury charge could be an action by the party holding the right. Therefore, the probate court erred in finding the Estate waived its right to a determination of the amount of reimbursement based on Peggy and Patricia's actions with regard to the jury charge.

**B.      *Was the Reimbursement Amount Issue Reserved for Future Proceedings and, if so, Did the Reservation of the Issue Preclude a Waiver Finding?***

Even if the Estate could be held to have waived a right it held based on Peggy and Patricia's actions, no action taken by Peggy or Patricia at trial could result in a waiver of the right to have the amount of reimbursement determined because the accounting/reimbursement issue was reserved by the probate court to be determined in a subsequent proceeding. Tracy acknowledged the reservation of the issue when she asserted in her pleadings, "Plaintiffs [sic] claims for removal and objections to the accounting are matters that will be heard after the trial on the merits." Moreover, the probate court's granting of Tracy's motion in limine excluding evidence relating to the accounting further shows that the issue was reserved. The motion in limine acknowledges that Peggy and Patricia's "objections to the Accounting and Inventory have been abated until after the conclusion of the trial of the merits." The probate court's post-judgment rulings also reflect that the issue was reserved. In particular, the court appointed a special master to conduct a comprehensive accounting, and approved the special master's findings with regard to the commingled amount of attorneys' fees paid from Waldo's Estate. In addition, the court ordered Tracy to supplement her accounting "to state what amount of money was expended from the Estate for Attorney fees during the time she was Independent Executor." Even if this court were to accept that the probate court did not intend to reserve the issue, all of the parties clearly believed the issue had been reserved; therefore, Peggy and Patricia did not have "actual knowledge" that they held the right to have the amount of the reimbursement

determined at trial, nor did they have the "actual intent" to relinquish that right. *See Ulico Cas. Co.*, 262 S.W.3d at 778. Moreover, because Peggy and Patricia believed they did not hold the right to have the amount of the reimbursement determined during trial, no action they took or failed to take "unequivocably manifested" an intent to no longer assert that right. *Enterprise-Laredo Associates*, 839 S.W.2d at 836. Therefore, the trial court erred in finding that Peggy and Patricia waived the Estate's right to have the reimbursement amount determined.

Tracy also asserts in her brief that evidence was presented at trial with regard to the reimbursement issue. The testimony at trial, however, was limited to testimony from attorneys with one of the law firms that represented Waldo's Estate, and the jury's finding regarding the reasonable amount of attorney's fees Tracy incurred was requested in anticipation of a jury finding that Tracy acted in good faith and with just cause. While this is evidence of a portion of the attorneys' fees potentially expended by Waldo's Estate with regard to the will contest, the testimony did not establish whose funds were expended in payment of those fees. Moreover, evidence was not presented to the jury regarding expenses and amounts paid by Waldo's Estate to other attorneys who worked on the will contest, including the attorney who received the $20,739.75 payment after the jury rendered its verdict but before the judgment was signed.

Tracy also argues that Peggy and Patricia should have appealed the first order by the probate court denying their request for an order for Tracy to repay the $20,739.75 in attorneys' fees Tracy paid from Waldo's Estate after the jury's verdict. This, however, is contrary to her argument urging the probate court to deny the motion on the basis that the judgment already included the reimbursement order, and it would be judicially inefficient to address each payment separately. Although the probate court denied the motion, the probate court ordered Tracy to

provide documentation of the amounts expended by Waldo's Estate on attorney's fees in furtherance of the need to determine the reimbursement amount.

### C.      Could the Reimbursement Amount Issue Be Reserved?

Tracy argues in her brief that the reimbursement amount issue could not be "severed" from the will contest. Tracy cites three cases in support of this argument: *Wich v. Fleming*, 652 S.W.2d 353 (Tex. 1983); *Russell v. Moeling*, 526 S.W.2d 533 (Tex. 1975); *Huff v. Huff*, 124 S.W.2d 327 (Tex. 1939).

In the most recent case, the Texas Supreme Court considered whether an issue regarding attorneys' fees in relation to a will contest had been preserved throughout the appellate process. *Wich*, 652 S.W.2d at 355-56. In that case, Wich, a will contestant, filed a motion for summary judgment. *Id.* at 358 (op. on reh'g). Fleming filed a response and cross-motion for summary judgment requesting $19,530.33 in attorney's fees. *Id*. Wich filed a reply attacking the amount of fees requested by Fleming. *Id*. The trial court rendered judgment for Wich, denying probate of the purported will, and awarded Fleming $10,000 in attorney's fees. *Id*. On appeal, Fleming argued the trial court erred in denying the probate and challenged the adequacy of the attorney's fees that she was awarded. *Id*. at 355. The court of appeals reversed the trial court's judgment and remanded the cause. *Id*. at 354. Initially, the Texas Supreme Court held that the issue with regard to the adequacy of the attorney's fees award was waived because it was not presented in a motion for rehearing filed in the court of appeals, in an application for writ of error, or as a cross-point in the party's reply to the other party's application for writ of error. *Id*. at 355-56. On motion for rehearing, however, the Texas Supreme Court held that the determination of the disputed fact issue of attorney's fees was improper in a summary judgment proceeding. *Id*. at

358 (op. on reh'g). The cause was then remanded to the trial court for a determination of the amount of attorney's fees due Fleming. *Id*.

Although the issue presented in *Wich* is readily distinguishable from the issue presented in the instant case, the court made several statements in its analysis of the attorney's fees issue that Tracy cites in her brief. "Although an executor is entitled to be reimbursed for reasonable expenses spent in a good faith attempt to defend a will, whether successful or not, we have held the executor's suit for recovery of attorney's fees must be brought in the original will contest." *Id*. at 355 (citing *Russell v. Moeling*, 526 S.W.2d 533 (Tex. 1975)). "The issue of attorney's fees is an integral aspect of the will contest." *Id*. In its original opinion, the Texas Supreme Court also stated, "The action of the court of appeals, therefore, had the effect of making the trial court's determination res judicata to any future action Fleming might pursue for her attorney's fees." *Id*. at 355-56. The Texas Supreme Court's holding on rehearing, however, obviously negated any contention that the court of appeals' judgment was res judicata with regard to the attorney's fees issue. *See id*. at 358.

In the other two cases cited by Tracy, the court explained the reason for disallowing a second suit by the executor seeking to recover attorney's fees was the absence of any finding by the jury in the first proceeding regarding whether the executor acted in good faith. *Russell*, 526 S.W.2d at 536 ("We think that the better rule is to have the questions of good faith and just cause determined in the original probate of the will when all relevant information has been placed before the finder of the facts."); *Huff*, 124 S.W.2d at 330 ("We think that the executor could have had submitted to the jury, along with the other issues, the question of good faith on his part in offering the will for probate; and if the jury had found that, under all the circumstances, he had acted in good faith, then he would have been entitled to judgment for such attorneys' fees and

court costs."). The court in *Russell* further asserted, "To allow these questions [of good faith and just cause] to be brought in a subsequent proceeding does not properly utilize judicial machinery and is to further burden a decedent's estate with administrative expenses and delay in the full distribution of the estate. This result would also be more in line with the rule of res judicata which in Texas bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, might have been tried in a former trial." 526 S.W.2d at 536.

Each of these three cases is factually distinguishable from the instant case for several reasons. First, although the expense at issue involves attorney's fees, the issue is not the reasonableness and necessity of those fees which generally must be submitted to a jury. Instead, the issue is about the amount Tracy wrongfully expended on attorney's fees from Waldo's Estate which she is required to reimburse just as she would be required to reimburse amounts spent on any other wrongful expenditure. If Tracy had paid her own money to defend the 2003 will, instead of wrongfully expended money from Waldo's Estate, this issue would never have required resolution by either the probate court or this court. Second, the issues of good faith and just cause were submitted to the jury in the instant case, and Tracy was ordered to reimburse Waldo's Estate for the attorneys' fees expended in defense of the will contest. The only question remaining in the instant case is the amount of the reimbursement, and, as previously noted, that amount does not hinge on a jury finding, but on the approval of an accounting setting forth the amount expended. Finally, the evidence regarding the reimbursement amount, even if disputed, is not tied to the issues in the will contest like the issues of good faith and just cause. Accordingly, the holdings in the cases cited by Tracy did not preclude the probate court from reserving the issue of the amount of the reimbursement for determination after the jury trial on the will contest.

**RES JUDICATA**

Peggy and Patricia next challenge the trial court's conclusion that any effort to establish the amount of the reimbursement owed by Tracy was barred by res judicata. Peggy and Patricia assert: (1) the reimbursement amount is not part of the same transaction as the will contest and could not have been brought as part of the will contest; (2) the reservation or abatement of the accounting issue precluded the application of res judicata; (3) Peggy and Patricia participated in trial in their individual capacities, not as representatives of Waldo's Estate.

## A. *General Res Judicata Principles*

"Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992). In *Barr*, the Texas Supreme Court adopted the "transactional" approach to res judicata, holding, "A subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which, through the exercise of diligence, could have been litigated in a prior suit." *Id.* at 631. "A determination of what constitutes the subject matter of a suit necessarily requires an examination of the factual basis of the claim or claims in the prior litigation." *Id.* at 630. "It requires an analysis of the factual matters that make up the gist of the complaint, without regard to the form of action." *Id.* "Any cause of action which arises out of those same facts should, if practicable, be litigated in the same lawsuit." *Id.*

The doctrine of res judicata is intended to prevent needless, repetitive litigation. *Hallco Tex., Inc. v. McMullen County*, 221 S.W.3d 50, 58 (Tex. 2007). In *Barr*, the Texas Supreme Court held res judicata applicable where the issues in two claims "form[ed] a convenient trial

unit," and separate lawsuits on each claim "would require significant duplication of effort of the court and the parties involved."  837 S.W.2d at 631.

**B.**      ***Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381 (Tex. 1985)**

Peggy and Patricia rely on *Van Dyke* to contend res judicata cannot apply because the probate court ordered a separate trial on the accounting issue, which would include a determination of the amount Waldo's Estate had expended in attorney's fees in defense of the will contest.  In *Van Dyke*, a law firm hired to represent a client in a divorce case was dismissed when new counsel was retained.  *Van Dyke*, 697 S.W.2d at 382.  The dismissed law firm intervened in the divorce action to recover its fees, and the client asserted a counterclaim against the law firm for malpractice.  *Id*.  The trial court granted the client's motion for a severance and/or separate trials for the intervention claim and the malpractice counterclaim.  *Id*.

The intervention claim was tried, and the jury awarded the law firm its attorney's fees.  *Id*. at 382-83.  The trial court then entered a judgment in the divorce case, severing the already litigated intervention claim and the unlitigated malpractice counterclaim from the divorce action.  *Id*. at 383.  The law firm then moved to sever the intervention claim from the malpractice counterclaim; however, the trial court denied the motion.  *Id*.  Since the trial court's prior order granted either a severance or separate trials, and the trial court subsequently denied the severance, the prior order could only be interpreted as having granted separate trials (but not a severance) of the intervention claim and malpractice counterclaim.  *Id*.  Despite this order, the trial court then granted a summary judgment on the malpractice counterclaim based on res judicata, which the court of appeals affirmed, reasoning, "the jury would not have returned [the fees] verdict if they had been persuaded by evidence of alleged malpractice on the part of" the law firm which evidence was introduced during the trial of the intervention claim.  *Id*.

The Texas Supreme Court noted that a trial court is permitted to order separate trials of claims in furtherance of convenience, and the trial court's decision to grant separate trials should not be disturbed on appeal absent an abuse of discretion. *Id*. at 384. Because the trial court granted the separate trials to allow the client "an opportunity to prove her case for malpractice, while preventing additional delay in finalizing the divorce," the Texas Supreme Court held the trial court did not abuse its discretion in granting the separate trials in furtherance of convenience. *Id*. Moreover, the Texas Supreme Court asserted, "the res judicata effects of an action cannot preclude litigation of claims that a trial court explicitly separates or severs from that action." *Id*.

Because we have held that the probate court in the instant case reserved or separated the accounting issue (which would include a determination of the amount Waldo's Estate spent on attorney's fees in defense of the will contest) from the trial on the will contest, we adopt the reasoning in *Van Dyke* and hold that res judicata did not preclude a determination of the amount of the reimbursement.

We further note that Peggy and Patricia are simply seeking to enforce the probate court's judgment by clarifying the amount due and recovering that amount. Res judicata serves as a bar to subsequent collateral attacks on a final judgment. *Matthews Const. Co. v. Rosen*, 796 S.W.2d 692, 694 (Tex. 1990). Only an attempt to judicially alter or change the substantive provisions of a final judgment constitutes a prohibited collateral attack. *Hagen v. Hagen*, 282 S.W.3d 899, 905 (Tex. 2009). Efforts to enforce a judgment do not equate to collateral attacks against a judgment. *Rosen*, 796 S.W.2d at 694. Applying the doctrine of res judicata in a suit to enforce a judgment would "pervert the sanctity of judgments, not preserve them" which is a goal of the

doctrine. *Rosen*, 796 S.W.2d at 694; *see also Walker v. Anderson*, 232 S.W.3d 899, 912 (Tex. App.—Dallas 2007, no pet.).

## JURISDICTION/PLENARY POWER

With regard to the probate court's contention that it lacked jurisdiction or plenary power to determine the reimbursement amount, Peggy and Patricia assert a probate court has the authority to render multiple judgments on discrete issues. Peggy and Patricia also contend that they are not asking the trial court to modify its earlier judgment, but simply seeking a clarification incidental to its enforcement.

In *Ajudani v. Walker*, 232 S.W.3d 219, 221 (Tex. App.—Houston [1st Dist.] 2007, no pet), an attorney ad litem was appointed to represent a decedent's minor daughter in an action brought by the decedent's sisters seeking the admission of a will for probate. Three applications by the attorney ad litem for the payment of his fees and expenses from the funds of the estate were granted for varying amounts before the attorney ad litem filed a motion for summary judgment arguing the will the sisters sought to probate was not a will and requesting that the costs associated with the defense of the case be taxed against the sisters. *Id*. at 221-22. The trial court granted the motion and ordered the costs to be assessed against the sisters. *Id*. at 222. Four additional applications by the attorney ad litem for payment of his fees and expenses from funds of the estate were granted before the appellate court notified the attorney ad litem that its mandate affirming the trial court's summary judgment had issued. *Id*. at 222. The attorney ad litem then filed a motion requesting the probate court to assess a sum certain, which was the total amount of all of his fees and expenses, against the sisters. *Id*. at 222-23. The probate court granted the motion. *Id*. at 223.

On appeal, the sisters argued the probate court did not have plenary power to assess the attorney ad litem's fees against them. *Id*. The Houston court noted, "Even if the probate court's plenary power ha[d] expired, however, it retain[ed] its inherent power to clarify or enforce [its prior] order." *Id*. In holding the probate court had inherent power to grant the motion and assess the sum certain against the sisters, the Houston court reasoned:

> Here, the probate court's October 6, 2005 order assessing costs was an order clarifying a previous order. In its August 7, 2003 order granting Walker's motion for summary judgment, the probate court adjudged costs against [the sisters]. Thus, the order determined *who* would pay costs, but not *how much* they would have to pay; the amount of Walker's fees and expenses up to this point had been determined by the court's three previous orders granting Walker's applications for authority to pay appointee fees and expenses. After this Court affirmed the probate court's order granting summary judgment in favor of Walker, Walker moved and the probate court ordered that [the sisters] pay $27,607.65 for Walker's fees and expenses. By ordering [the sisters] to pay a particular amount, the probate court was clarifying its August 7, 2003 order that had assessed costs against [the sisters] without fixing the amount to be paid and was, therefore, acting within its inherent power.

*Id*. at 223-24 (emphasis in original; citations omitted).[2]

The jurisdictional/plenary power issue presented in this case is similar to that presented in *Ajudani*. The probate court in the instant case entered a prior judgment ordering Tracy to reimburse Wilbur's Estate. The judgment determined *who* would reimburse Waldo's Estate, but not *how much* she would have to reimburse. Accordingly, the probate court retained inherent power to clarify and enforce the prior judgment by fixing the amount to be paid and enforcing the judgment. *See id*.

---

[2] Although the Houston court later reversed the probate court's order because the statute required the fees to be assessed against the estate and also reduced the amount of fees that could be recovered, this does not affect the Houston court's analysis with regard to the probate court's plenary power. *See Ajudani*, 232 S.W.3d at 224-25.

## ACCOUNTING

Because Tracy's accounting commingled the funds from Waldo's Estate and Bobbie's Estate, Peggy and Patricia challenge the probate court's conclusion that Tracy's accounting was in compliance with section 149A of the Texas Probate Code. Tracy responds that the accounting contained the statutorily-required content.

The probate court's conclusion regarding the accounting was tied to its conclusion that any determination of the amount to be reimbursed Waldo's Estate was waived or barred. In dictating its findings and conclusions on the record, the probate court stated:

> Court finds, therefore, that the accounting filed by Tracy Lynch is in compliance with 149A. Plaintiffs, as was stated earlier, are seeking additional information to recover attorneys' fees to which the doctrine of Res Judicata applies. Therefore, no further accounting to that issue is warranted. The accounting sought anticipates a further action during the administration. And there is no pending action at this time for attorneys' fees.

Because the probate court's approval of the accounting was premised on its conclusion that Peggy and Patricia were not entitled to any further accounting in an effort to determine the amount of the reimbursement, which we have held is erroneous, the probate court also erred in approving the accounting.

## ESTABLISHING THE REIMBURSEMENT AMOUNT

Both in their brief and at oral argument, Peggy and Patricia requested that this court render judgment on the reimbursement amount or provide some guidance on the manner in which the probate court should determine the reimbursement amount in the event of a remand. Appellate courts, however, are prohibited from rendering advisory opinions. *See City of Houston v. Williams*, 353 S.W.3d 128, 145 (Tex. 2011). Therefore, this court cannot provide the guidance suggested. Moreover, because the amount of the reimbursement is intertwined with the probate court's approval of an accounting, a rendition by this court would be improper.

## CONCLUSION

The probate court's order is reversed, and the cause is remanded to the probate court for further proceedings.

Catherine Stone, Chief Justice