

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00102-CV

———————————————

PETERSON, GOLDMAN & VILLANI, INC., Appellant

V.

ANCOR HOLDINGS, LP; TIMOTHY MCKIBBEN; JOSEPH RANDALL KEENE; AND ANCOR PARTNERS, INC., Appellees

---

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-236257-09

---

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Opinion by Justice Birdwell

## OPINION

After a decade and a half of legal proceedings, appellant Peterson, Goldman & Villani, Inc. (PGV) is still seeking someone to satisfy a guaranty agreement. In an earlier suit, PGV obtained a judgment against the defunct company that executed the guaranty, Ancor Holdings LLC (Ancor LLC). In this suit, PGV seeks to enforce that judgment against a group of related parties—Ancor Holdings LP (Ancor LP) and its principals, who are the appellees here.

The trial court rendered a take-nothing summary judgment in favor of appellees on grounds of res judicata, reasoning that PGV should have pressed all of its claims in the earlier suit. We hold, to the contrary, that PGV's suit to enforce the judgment does not offend res judicata. We further hold that PGV conclusively established Ancor LP's liability as a successor to Ancor LLC's judgment debt. We therefore affirm, in part, reverse and render, in part, and reverse and remand, in part.

## I.     Background

Ancor LLC was a holding company whose members were appellees Timothy McKibben and Joseph Randall Keene. At the turn of the millennium, Ancor LLC was a significant investor in a company called OpenPoint Systems, Inc., who was a borrower under a loan agreement with Bank of America. OpenPoint was struggling in early 2000. In March 2000, as part of an arrangement to restructure the loan, Ancor LLC executed a guaranty agreement in favor of Bank of America.

In May 2000, OpenPoint filed for bankruptcy, triggering the guaranty agreement. Bank of America sold its rights under the guaranty to PGV. PGV then attempted to collect from Ancor LLC, filing suit in Dallas County. After three and a half years of arbitration, PGV obtained an arbitration award against Ancor LLC. In May 2008, a Dallas district court signed a final judgment confirming the arbitration award.

In July 2008, PGV discovered that—unbeknownst to it and Bank of America, and in breach of a clause in the guaranty—Ancor LLC had merged with Ancor LP approximately eight years earlier, leaving Ancor LP the sole surviving entity. *Peterson, Goldman & Villani, Inc. v. Ancor Holdings, LP*, 420 S.W.3d 281, 283 (Tex. App.—El Paso 2013, pet. denied) (setting out these background facts). Consequently, PGV moved to modify the judgment to include Ancor LP as a judgment debtor subject to execution for the confirmed arbitration judgment. The trial court denied PGV's motion to modify. Both Ancor LLC and PGV appealed the trial court's arbitration-confirmation judgment to the Dallas Court of Appeals, which subsequently affirmed.

While that judgment was on appeal, though, PGV filed this suit against Ancor LP and its principals, McKibben, Keene, and Ancor Partners, Inc. PGV sought satisfaction of the judgment awarded against Ancor LLC, alleging various causes of action including successor liability. Appellees asserted res judicata and limitations as defenses. The proceeding was soon transferred to a district court in Tarrant County.

PGV moved for partial summary judgment on its declaratory-judgment and breach-of-contract claims against Ancor LP. For their part, appellees filed two motions for summary judgment in which they argued, *inter alia*, that PGV's claims were barred by res judicata. The trial court denied PGV's motion for partial summary judgment, granted appellees' motions for summary judgment, and dismissed PGV's claims with prejudice.

PGV's appeal was heard on transfer before the El Paso Court of Appeals, from which we have borrowed our recitation of the background facts. *See id.* In pertinent part, the El Paso court held that the elements of res judicata had not been conclusively established, and therefore summary judgment could not be sustained on that basis. *Id.* at 284–85. The court concluded that appellees had "never addressed" the privity element of res judicata, "much less established" it conclusively. *Id.* at 285. For that reason and others, the court reversed the summary judgment to the extent that it disposed of PGV's contractual and declaratory-judgment claims. *Id.* at 287. The court affirmed the summary judgment to the extent that it disposed of PGV's other claims.[1] *Id.*

---

[1]In particular, the court affirmed dismissal of PGV's claims for fraud, estoppel, tortious interference with contract, negligent misrepresentation, alter ego, conspiracy, and punitive damages, because PGV had not challenged dismissal of these claims. *Peterson, Goldman & Villani, Inc. v. Ancor Holdings, LP*, 420 S.W.3d 281, 287 (Tex. App.—El Paso 2013, pet. denied).

On remand, PGV amended its petition; it retained its claim for successor liability while adding some new theories and nonsuiting others.[2] Appellees filed an amended answer in which they pleaded res judicata and laches, among other affirmative defenses.

The parties once again filed dueling motions for summary judgment. Appellees focused solely on res judicata, taking pains to address privity. PGV argued that it had conclusively established Ancor LP's successor liability on the judgment. Once again, the trial court denied PGV's motion, granted appellees' motion, and dismissed all of PGV's claims with prejudice. PGV appeals.

## II. Summary Judgment Against PGV

In its first issue, PGV asserts that the trial court erred in granting summary judgment on the basis of res judicata. PGV asserts that appellees failed to establish two of the three elements of its res judicata defense: (1) privity between Ancor LLC and the appellees here and (2) that the subsequent action is based on claims or causes of action that were or should have been raised in the first action. We agree that the claims in the subsequent suit—in particular, PGV's successor-liability claim to enforce the arbitration judgment—were not and should not have been raised in the first

---

[2]In its live pleading, PGV alleged causes of action including contractual and successor liability, principal-agent liability, alter ego, punitive damages, unjust enrichment, and multiple forms of estoppel, while nonsuiting its other theories.

5

action. These were therefore not the type of claims that were required to be raised in the first action or be forever barred.[3]

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all elements of that defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c). When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Mann Frankfort*, 289 S.W.3d at 848. We should

---

[3]PGV further asserts that the doctrine of the law of the case prohibits this court from reconsidering the El Paso Court of Appeals's determination that appellees had not conclusively established the element of privity. PGV argues that the summary judgment record has not changed in anywise; appellees' only "new" evidence was PGV's own summary judgment motions, which were already part of the summary judgment record. We agree that little has changed in the state of the record. But because of our disposition on another element of res judicata, we need not address PGV's arguments concerning the law of the case and privity. *See* Tex. R. App. P. 47.1; *Horsley-Layman v. Adventist Health Sys./Sunbelt, Inc.*, 221 S.W.3d 802, 809 (Tex. App.—Fort Worth 2007, pet. denied).

6

then render the judgment that the trial court should have rendered. *See Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009); *Mann Frankfort*, 289 S.W.3d at 848.

Res judicata is an affirmative defense. *See* Tex. R. Civ. P. 94. A defendant who moves for summary judgment on the basis of this affirmative defense therefore has the burden to prove conclusively all its elements as a matter of law. *Dauz v. Valdez*, 571 S.W.3d 795, 803 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *see Parsons v. Turley*, No. 02-09-00381-CV, 2010 WL 5187704, at *2 (Tex. App.—Fort Worth Dec. 23, 2010, pet. denied) (mem. op.).

Res judicata, also known as claim preclusion, prevents the relitigation of a finally adjudicated claim and related matters that should have been litigated in a prior suit.[4] *State & Cty. Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001). The policies behind the claim-preclusion doctrine reflect the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery. *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 750 (Tex. 2017). The elements of the res judicata defense are as follows: (1) a prior final determination on the merits by a court of competent

---

[4]An arbitration award is treated as a prior final judgment and has preclusive effect for purposes of res judicata. *Premium Plastics Supply, Inc. v. Howell*, 537 S.W.3d 201, 205 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Blumberg v. Bergh*, No. 02-04-00138-CV, 2005 WL 1047592, at *2 (Tex. App.—Fort Worth May 5, 2005, no pet.) (mem. op.) ("An arbitration award has the same effect as the judgment of a court of last resort[.]").

jurisdiction; (2) identity of parties, or those in privity with them, in the prior and subsequent actions; and (3) the subsequent action is based on claims or causes of action that were or should have been raised in the first action. *Travelers Ins.*, 315 S.W.3d at 862. Our focus here is the third element.

In determining whether a claim or cause of action should have been raised in a prior action, Texas follows the transactional approach. *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007). Under this approach, we look to whether the subsequent claim or cause of action arises out of the same subject matter—the same "transaction, or series of connected transactions, out of which" the original suit arose. *Id.* (quoting *Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 631 (Tex. 1992)). Determining the scope of the "subject matter" or "transaction" of the prior suit requires "an analysis of the factual matters that make up the gist of the complaint, without regard to the form of action." *Id.* This should be done pragmatically, "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage." *Id.*

Here, the two lawsuits did not involve a common time, origin, motivation, or domain. The two lawsuits involve different parties and are predicated on two different agreements, executed at different times and for different purposes. The guaranty agreement was executed in March 2000 by Bank of America and Ancor LLC

8

to shore up Bank of America's loan to OpenPoint. The merger agreement was executed in September 2000 by Ancor LLC and Ancor LP in order to restructure McKibben and Keene's holdings in a different organizational form. The two agreements are each self-contained, with no internal references between each other. "Where claims arise at different times through separate transactions not made in the context of a continuing legal relationship, res judicata may not apply, even where the parties and subject matter of the transactions are the same." *Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass'n*, 77 S.W.3d 487, 497 (Tex. App.—Texarkana 2002, pet. denied); *see Karle v. Innovative Direct Media Ltd.*, 309 S.W.3d 762, 766 (Tex. App.—Dallas 2010, no pet.) (determining res judicata did not apply because the "two lawsuits arose under different facts and different contracts"); *Tex. Beef Cattle Co. v. Green*, 860 S.W.2d 722, 724 (Tex. App.—Amarillo 1993, writ denied) (concluding that res judicata did not apply because the two suits concerned separate cattle transactions that were executed months apart). Moreover, as appellees emphasized during the initial proceeding, PGV did not have a "continuing legal relationship" with Ancor LP. *See Pinebrook Props.*, 77 S.W.3d at 497. In their summary judgment briefing, appellees argued, "Ancor LLC and Ancor LP are not the same entity . . . and [they] never have been." They further argued, "These are two distinct entities, and a merger did not render them 'one and the same' for purposes of PGV's lawsuit." Ancor LP thus made clear that its "expectations or business understanding" were to be treated as

9

separate from Ancor LLC for purposes of the guaranty agreement. *See Citizens Ins.*, 217 S.W.3d at 449.

As such, the two proceedings entailed two discrete sets of proof. The first proceeding revolved around the interpretation of Ancor LLC's guaranty agreement, as well as evidence concerning the value of OpenPoint's collateral. The second proceeding was to focus on the distinct terms of the merger agreement and the successor liability of Ancor LP. Such claims would not necessarily have made a convenient unit for trial. And if a purpose of res judicata is to prevent repetitive litigation, we note that PGV's claims did not require any issues related to OpenPoint or Ancor LLC's guaranty to be duplicated in this second suit.[5] *See Engelman Irrigation*, 514 S.W.3d at 750. PGV could simply allege that it had a valid judgment to enforce against appellees, without delving into detail concerning the origins of that judgment.

Such a lawsuit would not be forbidden, for res judicata does not bar actions brought to enforce prior judgments. *See Matthews Constr. Co. v. Rosen*, 796 S.W.2d 692, 694 (Tex. 1990); *In re Estate of Lynch*, 395 S.W.3d 215, 227 (Tex. App.—San Antonio 2012, pet. denied); *McCarroll v. My Sentinel, LLC*, No. 14-08-01171-CV, 2009 WL 4667403, at *2 (Tex. App.—Houston [14th Dist.] Dec. 10, 2009, no pet.) (mem. op.); *Walker v. Anderson*, 232 S.W.3d 899, 912 (Tex. App.—Dallas 2007, no pet.). Applying

---

[5]Had PGV filed a second suit on the guaranty agreement, such a suit would have undoubtedly covered some of the same transactional ground as before. But PGV did not file such a suit. Instead, the guaranty debt was reduced to and transformed into a judgment, and in this suit to enforce the judgment, few if any issues from the first suit need be repeated.

the doctrine of res judicata in a suit to enforce a judgment would "pervert the sanctity of judgments, not preserve them," which is a goal of the doctrine. *Lynch*, 395 S.W.3d at 227 (quoting *Matthews*, 796 S.W.2d at 694).

In *Matthews*, the Texas Supreme Court applied this thinking to hold that once a judgment against a corporation was obtained, res judicata did not bar the plaintiff from seeking to enforce that judgment against an owner who used the corporation as his alter ego. *See* 796 S.W.2d at 692–94. The court rejected the owner's assertion of res judicata and explained that in seeking to pierce the corporate veil, the plaintiff was not attempting to challenge the prior judgment but was seeking to enforce it, as the victorious party was entitled to do. *McCarroll*, 2009 WL 4667403, at *2 (summarizing *Matthews*); *see Strange v. Estate of Lindemann*, 408 S.W.3d 658, 661 (Tex. App.—Fort Worth 2013, no pet.) ("Typically, a postjudgment suit against an alleged alter ego is not a collateral attack on the prior judgment, and thus is not barred by res judicata.").

In our view, *Matthews* is on point. Under *Matthews*, a party may seek to impose liability for a corporation's judgment obligations onto a set of closely related principals without running afoul of res judicata; such a claim is not one that should have been raised in the initial litigation, per the third element of res judicata. Here, too, PGV seeks to enforce a judgment for Ancor LLC's obligations against a set of closely-related principals who were never made parties to the initial suit. The only difference here is that the primary basis for that third-party responsibility is successor liability rather than veil piercing. Under the logic of *Matthews*, PGV may seek to

11

enforce the confirmed arbitration judgment, and such a claim is not one that should have been raised in the initial litigation.

Appellees argue, however, that regardless of whether its own liability *should have* been raised in the initial proceeding, that claim *was* indeed raised in the initial proceeding. Because it was raised in the initial proceeding, appellees argue, res judicata bars further litigation of this claim. Appellees point to PGV's motion to modify during the confirmation proceeding, in which PGV discussed the merger agreement and asked the trial court to hold Ancor LP liable on the arbitration award as a successor to Ancor LLC. Appellees argue that PGV has raised essentially the same successor theory of liability again here and that PGV's claim should therefore be precluded.

We disagree. While PGV *attempted* to raise its successor-liability theory during the confirmation proceeding, it could not do so due to the limited nature of an arbitration-confirmation proceeding, which is restricted to the issue of whether statutory grounds exist for modifying or vacating the award. *See Hoskins v. Hoskins*, 497 S.W.3d 490, 494 (Tex. 2016); *Blumberg v. Bergh*, No. 02-04-00138-CV, 2005 WL 1047592, at *2 (Tex. App.—Fort Worth May 5, 2005, no pet.) (mem. op.). Those statutory grounds do not encompass PGV's successor-liability theory, and the confirmation proceeding therefore offered no meaningful opportunity to raise this argument. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 171.088, .091. It would be inequitable to apply res judicata to this effectively unraised theory, which has never

12

been considered on its merits due to the procedural confines of a confirmation proceeding. *See Kothmann v. Cook*, 113 S.W.3d 471, 475–76 (Tex. App.—Amarillo 2003, no pet.) (declining to apply res judicata, reasoning that "[b]ecause of the special and limited nature of the turnover proceeding, Kothmann would not have been entitled to raise those substantive claims against Cook had he attempted to do so"); *see also Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 799 n.2 & 805 (Tex. 1994) (declining to apply issue preclusion to state-law claims, in part because a federal procedural requirement prevented the plaintiff from bringing its state-law claims in a prior federal suit).

It would also be inconsistent with the policy underlying res judicata. One of the policies supporting res judicata is preventing double recovery. *See Engelman Irrigation*, 514 S.W.3d at 750. But applying res judicata in this case would prevent any recovery whatsoever on a lawfully obtained judgment. "A court should not apply res judicata to deprive a prior judgment of its full legal effect." *Drake Interiors, LLC v. Thomas*, 433 S.W.3d 841, 853 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (op. on reh'g). This we will not do.

To obtain summary judgment based on res judicata, it was appellees' initial burden to conclusively establish each of the defense's essential elements. *See Dauz*, 571 S.W.3d at 803. As to the third element of res judicata, whether the claim was or should have been raised in the initial litigation, this burden was not satisfied. At best, the summary judgment record showed two suits based on two discrete transactions,

and the second suit was merely an attempt to enforce the judgment obtained through the first suit. Because appellees failed to establish their burden, summary judgment could not have been granted based on this affirmative defense. The trial court erred in concluding otherwise, and in dismissing PGV's claims for contractual and successor liability, principal-agent liability, unjust enrichment, and multiple forms of estoppel.[6]

We sustain PGV's first issue.

### III. Summary Judgment Against Ancor LP

### A. Successor Liability of Ancor LP

In its second issue, PGV asserts that it conclusively established that Ancor LP was liable for the arbitration-confirmation judgment against Ancor LLC. PGV notes that under Texas law, the surviving entity in a merger assumes all liabilities of the entity that was merged out. PGV further points out that the merger agreement contains express language under which Ancor LP agreed to assume Ancor LLC's liabilities. PGV asserts that as the surviving entity, Ancor LP must have assumed liability on the judgment by necessity and as a matter of law. PGV asserts that it is therefore entitled to summary judgment against Ancor LP for its theory of successor liability.

---

[6]We do not reach the same conclusion as to PGV's theories of alter ego, punitive damages, and plain estoppel. The El Paso Court of Appeals has already affirmed dismissal of those theories. *See Peterson, Goldman & Villani*, 420 S.W.3d at 287.

To prevail, PGV was required to conclusively show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 278 (Tex. 2018). The burden would then shift to appellees to present evidence creating a fact issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

Under Texas law, a certificate of merger must be filed for a merger to become effective if any domestic limited liability company is a party to the merger. *See Trustmark Nat'l Bank v. Tegeler* (*In re Tegeler*), 586 B.R. 598, 650 n.33 (Bankr. S.D. Tex. 2018) (quoting Tex. Bus. Orgs. Code Ann. § 10.151(a)(1)(A)); *see also* Tex. Bus. Orgs. Code Ann. § 1.002(22) (including domestic limited liability companies in the definition of "filing entity," which must file under section 10.151). "A merger that requires such a filing takes effect on the acceptance of the filing of the certificate of merger by the secretary of state or county clerk, as appropriate." *Tegeler*, 586 B.R. at 650 n.33 (cleaned up). When a merger takes effect, "all liabilities and obligations of each organization that is a party to the merger are allocated to one or more of the surviving or new organizations in the manner provided by the plan of merger." *Alta Mesa Holdings, LP v. Ives*, 488 S.W.3d 438, 449 n.13 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (quoting Tex. Bus. Orgs. Code Ann. § 10.008(a)(3)). The surviving organization to which a liability is allocated under the plan of merger is the primary obligor for the liability. *Id.* (quoting Tex. Bus. Orgs. Code Ann. § 10.008(a)(4)).

Attached to PGV's motion for summary judgment were three exhibits showing the completed merger between Ancor LLC, a domestic limited liability company, and Ancor LP, a Delaware limited partnership. The first exhibit was titled "Agreement and Plan of Merger." It specified that Ancor LLC would merge "with and into" Ancor LP, the surviving entity, and that Ancor LP would "assume all the liabilities of every kind and description of" Ancor LLC. Keene executed the merger agreement on behalf of both Ancor LLC and LP.[7] The second exhibit was the "Articles of Merger," which was filed with the Texas Secretary of State. The articles recited that Ancor LLC and LP were merging and that Ancor LP was the surviving entity. The third exhibit was a "Certificate of Merger" issued by the Texas Secretary of State, approving the merger as of September 22, 2000. This evidence conclusively established a completed merger.

By dint of the merger agreement and the completed merger itself, Ancor LP assumed all of Ancor LLC's liabilities, including the confirmed arbitration judgment. *See id.* We conclude that PGV satisfied its initial burden to conclusively establish its successor-liability claim. *See Tarr*, 556 S.W.3d at 278. The burden therefore shifted to appellees to present evidence creating a fact issue. *See Walker*, 924 S.W.2d at 377.

---

[7]More specifically, Keene executed the agreement as a member of Ancor LLC and as president of Ancor Partners, Inc., which was the general partner of Ancor LP.

16

**B.    Res Judicata**

Appellees first assert that res judicata precludes summary judgment in favor of PGV.

The nonmovant cannot defeat the granting of a motion for summary judgment by merely pleading an affirmative defense.  *New Talk, Inc. v. Sw. Bell Tel. Co.*, 520 S.W.3d 637, 645 (Tex. App.—Fort Worth 2017, no pet.).  Instead, the nonmovant "must come forward with evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment." *Id.*

For the reasons already stated, *supra*, we conclude that appellees have not established a fact issue as to the third element of res judicata.  Therefore, res judicata does not stand in the way of a summary judgment in favor of PGV.  *See id.*

**C.    Attack on Arbitration Award**

In an attempt to create a fact issue, appellees next dispute the arbitrator's determination that Ancor LLC was liable on the guaranty.  Appellees argue that the guaranty was carefully drafted so that it would trigger only if the value of OpenPoint's collateral reached a certain level.  Appellees assert that this level was never attained, as Bank of America recognized when it sold its rights under the guaranty for 2.59 cents on the dollar.  Appellees contend that the arbitrator therefore erred by finding any liability on the guaranty.

But this is not an appeal from judicial confirmation of the arbitration award; that matter was resolved by the Dallas Court of Appeals nearly ten years ago.  *See*

17

*Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 834 (Tex. App.—Dallas 2009, no pet.). Even if the merits of the confirmation proceeding were properly before us, we could not entertain appellees' criticism of the arbitrator's reasoning. "Contentions that the arbitrator's reasoning was legally erroneous or internally inconsistent, or that the arbitrator misinterpreted the contract or misapplied the law do not provide a basis for vacating an award." *Denbury Onshore, LLC v. Texcal Energy S. Tex., LP*, 513 S.W.3d 511, 520 (Tex. App.—Houston [14th Dist.] 2016, no pet.). "Committing mistakes of fact or law is not a proper ground for vacating an award[.]" *Id.*

Appellees' attack on the arbitration award is doubly precluded, and it does not create a fact issue sufficient to defeat summary judgment in favor of PGV. *See Walker*, 924 S.W.2d at 377.

**D.    Laches**

Next, appellees resist summary judgment by asserting that they have created a fact issue on a different affirmative defense:  laches. *See New Talk*, 520 S.W.3d at 645. Appellees note that PGV did not file suit against Ancor LP until eight years after the merger.  According to appellees, this unreasonable delay prejudiced appellees' discovery rights and ability to settle the case, and PGV's belated claims against appellees should therefore be barred by laches.

Laches is an equitable remedy that prevents a plaintiff from asserting a claim because of a lapse of time; the claim is said to be stale. *Vickery v. Vickery*, 999 S.W.2d

18

342, 355 (Tex. 1999) (op. on reh'g). To invoke the equitable doctrine of laches,[8] the moving party ordinarily must show (1) an unreasonable delay by the opposing party in asserting it rights, and (2) the moving party's good faith and detrimental change in position because of the delay. *In re Laibe Corp.*, 307 S.W.3d 314, 318 (Tex. 2010) (orig. proceeding). The defense is available only in extraordinary cases. *Brink v. Fid. Bank of Fort Worth*, 966 S.W.2d 684, 684 (Tex. App.—Fort Worth 1998, no pet.).

PGV challenges appellees' laches defense on its second element in particular. To defeat summary judgment, appellees were required to create a fact issue as to

---

[8]As an initial matter, PGV asserts that laches does not apply to the purely legal claims that are at issue in this appeal. PGV cites cases from our sister courts holding that laches, as an equitable doctrine, may bar only equitable claims or proceedings, and it is categorically inapplicable to legal claims. *See Wayne v. A.V.A. Vending, Inc.*, 52 S.W.3d 412, 415 (Tex. App.—Corpus Christi 2001, pet. denied); *Tex. Att'y Gen. of State of Tex. on Behalf of Ford v. Daurbigny*, 702 S.W.2d 298, 300 (Tex. App.—Houston [1st Dist.] 1985, no writ). PGV might have also cited older authorities from this court, in which we implied as much. *See Steward v. Steward*, 734 S.W.2d 432, 434 n.2 (Tex. App.—Fort Worth 1987, no writ) (op. on reh'g); *Reynolds v. Farmers & Merchants Nat'l Bank of Nocona*, 135 S.W.2d 556, 558 (Tex. App.—Fort Worth 1939, no writ).

However, the Texas Supreme Court has consistently indicated that laches might apply to legal claims. *See Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 80 (Tex. 1989) (describing the first element of laches as "an unreasonable delay by one having legal or equitable rights in asserting them"); *City of Fort Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex. 1964) (same). Recognizing this, some Texas courts have expressly held that legal claims are subject to laches. *See, e.g.*, *Regent Int'l Hotels, Ltd. v. Las Colinas Hotels Corp.*, 704 S.W.2d 101, 106 (Tex. App.—Dallas 1985, no writ).

We have reserved judgment, and we will continue to do so here. *See Sw. Bell Tel., LP v. Chappell*, No. 02-12-00071-CV, 2013 WL 257369, at *4 n.4 (Tex. App.—Fort Worth Jan. 24, 2013, no pet.) (mem. op.). We need not decide today whether laches may apply to legal claims, for even assuming that laches generally applies, appellees' proof in support of this defense fails to raise a genuine issue of material fact. The laches defense thus fails regardless of its applicability.

whether they had changed position in good faith and to their detriment because of the delay. *See Laibe*, 307 S.W.3d at 318; *New Talk*, 520 S.W.3d at 645. To that end, appellees offered Keene's affidavit testimony that if PGV had not delayed in filing suit, Ancor LP could have better pursued a "suitable compromise" with Bank of America.

In response, PGV observes that its delay could not have impaired appellees' ability to settle with Bank of America. When PGV acquired the guaranty debt, Bank of America parted with any interest in the debt. From that point, Bank of America could not settle a dispute regarding rights it no longer owned. Therefore, it was impossible for any delay on PGV's part to impair the prospects of a bargain between appellees and Bank of America.[9]

Keene also testified concerning another form of detrimental change in position: that PGV's delay hampered "Ancor LP's ability to discover information from Bank of America to substantiate why the Bank never pursued collection of the Guaranty against Ancor LP." We doubt the value of such an inquiry into Bank of America's interpretation of the guaranty. What Bank of America thought of the guaranty's language is immaterial, because parol evidence such as this cannot be used to contradict the unambiguous terms of the agreement. *See Alta Mesa*, 488 S.W.3d at 450. "Where the parties have entered into an unambiguous written contract, the

---

[9]This much was admitted during Keene's deposition.

20

instrument alone will be deemed to express the intention of the parties because it is the objective intent, not subjective intent, that controls." *Id.*

But even if this avenue of discovery had value, appellees offered nothing beyond Keene's conclusory assertions to show that this avenue was impaired. Keene did not identify any unsuccessful effort to discover evidence. Just the opposite, there was no shortage of record evidence concerning Bank of America's thoughts on the guaranty. The arbitration award makes reference to a number of exhibits concerning the bank's impressions, including an affidavit from the bank's representative discussing his views of the guaranty, letters and emails drafted by the bank representative summarizing his perspective of the guaranty's terms, internal bank documents purporting to define what terms were incorporated into the guaranty, direct testimony by counsel for the bank that certain terms were included in the guaranty, and a report drafted by the bank's vice president explaining the bank's thinking. In short, there was plenty of what Keene claimed to lack.

We have no doubt that one purpose of the laches doctrine is "to prevent injustice against one party that could result when another asserts his demands so long after they matured that evidence has been lost or impaired." *Fazakerly v. Fazakerly*, 996 S.W.2d 260, 265 (Tex. App.—Eastland 1999, pet. denied). But there must be a showing of change in position. *See id.* (sustaining laches based on evidence that a key witness's memory was ruined by Alzheimer's disease); *Jernigan v. Scott*, 518 S.W.2d 278, 282–83 (Tex. App.—San Antonio 1974, writ ref'd n.r.e.) (sustaining laches because

21

key witness had died). Appellees offered only speculation about missed opportunities for discovery. This does not suffice to raise a fact issue as to the "extraordinary" circumstances required for laches. *See Brink*, 966 S.W.2d at 684; *Stanley Works v. Wichita Falls ISD*, 366 S.W.3d 816, 826 (Tex. App.—El Paso 2012, pet. denied) ("Stanley's bare claims that the [evidence] had been destroyed and witnesses had scattered do not conclusively prove that Stanley's ability to defend was impaired or that it made a good faith and detrimental change of position as a result of the delay."); *Wakefield v. Bevly*, 704 S.W.2d 339, 345 (Tex. App.—Corpus Christi 1985, no writ) (rejecting laches claim because there was "no showing that the records were unavailable" due to delay).

To raise a genuine issue of material fact, "the evidence must transcend mere suspicion." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). Appellees' evidence does not cross this threshold. Because appellees have failed to create a fact issue, their laches defense is insufficient to defeat PGV's entitlement to summary judgment. *See New Talk*, 520 S.W.3d at 645.

## E.     Summary

Through its evidence, PGV conclusively established its entitlement to summary judgment on successor liability, *see Tarr*, 556 S.W.3d at 278, and appellees failed to create a fact issue sufficient to show otherwise. *See Walker*, 924 S.W.2d at 377; *New Talk*, 520 S.W.3d at 645. We conclude that the trial court should have granted summary judgment holding Ancor LP liable on the judgment against Ancor LLC. We

22

will therefore render the judgment the trial court should have rendered. *See Myrad Props.*, 300 S.W.3d at 753. To that extent, we sustain PGV's second issue.

## IV.    Summary Judgment Against Other Appellees

Also within their second issue, PGV contends that it established summary judgment grounds for its claims against the other appellees, Keene, McKibben, and Ancor Partners, Inc. PGV asserts that it conclusively established that these other appellees operated in an implied partnership with Ancor LLC, and these appellees are therefore jointly and severally liable on the judgment against Ancor LLC.

PGV appears to have raised this implied-partnership claim for the first time on appeal, for this claim appears nowhere in PGV's live petition or its motion for summary judgment. A trial court cannot enter judgment on a theory of recovery not sufficiently set forth in the pleadings or otherwise tried by consent. *Hartford Fire Ins. Co. v. C. Springs 300, Ltd.*, 287 S.W.3d 771, 779 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (op. on reh'g); *Street v. Skipper*, 887 S.W.2d 78, 80 (Tex. App.—Fort Worth 1994, writ denied). Moreover, the movant must state in its motion the specific grounds upon which the summary judgment should be granted. *See* Tex. R. Civ. P. 166a(c). It is settled that a court cannot grant summary judgment on grounds that were not presented. *Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 609 (Tex. 2012).

23

The trial court therefore could not have granted summary judgment on this unpleaded and unpresented claim.[10]

To that extent, we overrule the remainder of PGV's second issue.

## V.     Conclusion

We affirm the trial court's judgment to the extent it disposed of PGV's theories of alter ego, punitive damages, and plain estoppel.  We reverse and render judgment in favor of PGV on its claim to hold Ancor LP liable on the arbitration-confirmation judgment rendered against Ancor LLC.  We remand to the trial court for further proceedings concerning PGV's other claims, including principal-agent liability, unjust enrichment, and multiple forms of estoppel.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered:  July 18, 2019

---

[10]*See also Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 839–40 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.) (citing *Duncan v. Allen*, No. 9:15-CV-29, 2016 WL 4467674, at *5 (E.D. Tex. Aug. 24, 2016), and *Robbins v. Payne*, 55 S.W.3d 740, 748 (Tex. App.—Amarillo 2001, pet. denied)) (rejecting, as patently unmeritorious, a claim that an implied partnership overlapped the organizational form of an LLC and its members).