**Opinion issued October 26, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-21-00546-CV

————————————

**FUEL 2 GO, LLC AND D&R USA ENTERPRISES, INC., Appellants**

**V.**

**MESA FORTUNE, INC., D/B/A MESA FOOD MART INC., Appellee**

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-51843**

---

## MEMORANDUM OPINION

This interlocutory appeal involves a dispute between appellants, Fuel 2 Go, LLC and D & R USA Enterprises, Inc. (D & R), and appellee, Mesa Fortune, Inc., doing business as Mesa Food Mart Inc. (Mesa Fortune), regarding which entity has the right to title and possession of a piece of commercial property—a convenience

store. On appeal, Fuel 2 Go and D & R challenge a temporary injunction signed by the trial court ordering them, inter alia, (1) to vacate the property; (2) to return possession of the property to Mesa Fortune; (3) to not interfere with Mesa Fortune's right of possession of the property; (4) to not prevent Mesa Fortune or its customers from accessing the property; and (5) to not harass, intimidate, or threaten Mesa Fortune or its customers while they are on the property.[1]

We affirm.

### Background

On August 19, 2021, Mesa Fortune filed suit against D & R and other parties, including R & K Shaik Ent. Inc. (Shaik). Mesa Fortune later amended its petition to add Fuel 2 Go as a defendant. In its second amended petition and application for injunctive relief—its live pleading—Mesa Fortune characterized the suit as one "to recover ownership and possession of a convenience store business known as Mesa Food Mart located at 8000 Mesa Drive Houston Texas, Harris County Texas 77028." Mesa Fortune also alleged:

- On September 5, 2016 "the real property and improvements" located at 8000 Mesa Drive was conveyed by deed to Shaik.

- On May 15, 2017, Shaik, as landlord, entered into a commercial lease agreement (Lease Agreement) with Mesa Fortune, as lessee, to lease "the convenience store building" at 8000 Mesa Drive (Lease Premises), and Mesa Fortune took possession of the Lease Premises on that date.

---

[1] A party may appeal from an interlocutory order of a district court that grants or refuses a temporary injunction. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(4).

- Shaik "conveyed the real property and improvements comprising the Lease Premises," to U.S. Assets Acquisition by a deed recorded on January 21, 2020, and, that same day, U.S. Assets conveyed the Lease Premises by a recorded deed to SCF RC Funding IV LLC (SCF), another defendant in the suit.[2]

- On February 23, 2021—nearly four years after Mesa Fortune took possession of the Lease Premises—Mesa Fortune received a letter from SCF informing it that (1) SCF was the new owner of the Lease Premises, (2) Mesa Fortune needed to vacate the premises, and (3) another company would purchase Mesa Fortune's inventory.

- Mesa Fortune advised SCF that it had "a valid existing lease in place" with Shaik for the Lease Premises "prior to the conveyance" of the property to SCF "and thus . . . SCF purchased the property subject to [Mesa Fortune's] Lease and [Mesa Fortune] had the right to remain on the property pursuant to that Lease."

- On March 3, 2021, SCF advised Mesa Fortune not to pay Shaik any more rent.

---

[2] The style of D & R's brief (but not Fuel 2 Go's brief) also lists SCF as an "appellee." Rule of Appellate Procedure 3.1(c) defines an appellee as "a party adverse to an appellant." TEX. R. APP. P. 3.1(c). As discussed below, the temporary injunction was granted on the application of Mesa Fortune providing temporary relief to it against D & R, Fuel 2 Go, and other defendants aligned with them, but SCF, while a defendant named by Mesa Fortune, is neither granted relief in the order nor subject to it. D & R raises issues challenging the temporary injunction order but does not raise appellate issues addressed against SCF. Thus, SCF is not an "appellee" in the context of this interlocutory appeal. *See Showbiz Multimedia, LLC v. Mountain States Mortg. Ctrs., Inc.*, 303 S.W.3d 769, 771 n.3 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("An appellee . . . must be a party to the trial court's final judgment and must be someone against whom the appellant raises issues or points of error in the appellant's brief."); *DHI Holdings, LP v. Legacy Mortg. Asset Tr. 2018-RPLS2*, No. 14-19-00987-CV, 2021 WL 4957023, at *3 (Tex. App.—Houston [14th Dist.] Oct. 26, 2021, pet. denied) (mem. op.) (holding that party identified in briefing as "an appellee" was not "an appellee" because appellant did not argue for any relief against that party on appeal).

- Mesa Fortune had "paid all rent, taxes, and other monies due under the terms of the Lease [Agreement] from May, 2017, up to and including February 1, 2021," but, based on SCF's instruction, Mesa Fortune did not pay any more rent to Shaik.

- On March 29, 2021, Mesa Fortune sent a letter to SCF, stating that SCF had informed it not to pay rent to Shaik and asking for direction as to whom Mesa Fortune should pay rent.

- On August 2, 2021, Shaik "executed a Special Warranty Deed . . ., purporting to convey the real property and improvements comprising the convenience store [the Lease Premises] to D & R."

- The conveyance of the Lease Premises to D & R was "void" because Shaik had conveyed the property to U.S. Assets in January 2021 and no longer had title to the property.

- On August 9, 2021, Shaik's attorney sent Mesa Fortune a "Notice of Actual Lockout for Non-payment of Rent," informing Mesa Fortune that, based on its non-payment of rent, Chapter 93 of the Property Code permitted the locks to be changed on the Lease Premises.[3]

- On August 11, 2021, Mesa Fortune emailed SCF asking, as it had in its March 29 letter, for "direction as to who[m] to pay the rent pending the resolution of [the] matter."

- That same day, Shaik "sent an off-duty constable to the Lease Premises" to lockout Mesa Fortune for non-payment of rent, but, after Mesa Fortune informed the constable that Shaik was not the landlord, the constable left.

- On August 13, 2021, the off-duty constable returned to the Lease Premises with four other men, who removed Mesa Fortune's employee from behind the store's counter, "disconnected all the cameras in the store, left the cashier's cabin door open[,] . . . chained the front door with a lock[,] and locked [Mesa Fortune] out of the Lease Premises." Shaik "posted guards at the Lease Premises for several days."

[3] When it answered Mesa Fortune's suit, D & R claimed that it had "entered into an agreement with [Shaik]" whereby Shaik "undertook the responsibility of resolving the issues with delinquent tenant [Mesa Fortune], including rent and possession."

4

- On August 16, 2021, Shaik and its representatives "entered the Lease Premises without a writ of possession and re-opened the convenience store business . . . and in the process [were] selling for their own use all the inventory of the convenience store," valued at $150,000 and "[took] cash in the cash register" of approximately $10,000.

- On August 17, 2021, Shaik sent Mesa Fortune a "Notice of Termination and Demand for Accelerated Rent," informing Mesa Fortune (1) that it was in default under the lease, (2) that rent for the remaining term of the lease was accelerated, (3) that—under a provision in the lease— "[the] landlord owns a security interest and lien on all the inventory, fixtures and personal property," and (4) that Mesa Fortune had no further right to possession of the Lease Premises.

- On August 20, 2021, Mesa Fortune obtained a temporary restraining order (TRO) requiring Shaik and other defendants aligned with it to vacate the Lease Premises and to return possession to Mesa Fortune.[4]

- Fuel 2 Go claimed that it had a lease agreement for the Lease Premises with D & R, which claimed to be the owner and new landlord, entitling Fuel 2 Go, as lessee, to possession of the Lease Premises.

- Mesa Fortune asked for documentation of the lease between D & R and Fuel 2 Go, but no documentation was provided.

- On August 23, 2021, Mesa Fortune's representatives "went to the Lease Premises to obtain possession but were confronted with individuals claiming to be . . . representatives of Defendant Fuel 2 Go."

- Fuel 2 Go claimed to be in possession of the Lease Premises and refused to vacate the property.

Based on the foregoing allegations, Mesa Fortune asserted claims for conversion, trespass, and declaratory judgment, asking the trial court to declare, inter alia, that (1) neither Shaik nor D & R were the owner or landlord of the Lease

---

[4] The TRO was later extended.

5

Premises; (2) the special warranty deed from Shaik to D & R was void; (3) "Defendant SCF own[ed] the Lease Premises subject to [Mesa Fortune's] rights (including possession) under the Lease and that the Lease [was] binding upon Defendant SCF"; (4) Mesa Fortune had rightfully withheld rent at SCF's direction and was "not in default under the Lease Agreement"; (5) any lease between D & R and Fuel 2 Go was "void"; (6) neither "Defendant D & R [nor] Defendant Fuel 2 Go [were] entitled to possession of the Lease Premises"; and (7) Mesa Fortune was "the Tenant under the Lease Agreement . . . entitled to immediate possession of the Lease Premises."

Mesa Fortune requested damages for the conversion and trespass claims and asked for its attorney's fees. Mesa Fortune sought to interplead the rental payments that it had withheld at SCR's direction and all future rental payments into the trial court's registry until the dispute was resolved. Mesa Fortune also asked for injunctive relief—including a TRO, a temporary injunction, and a permanent injunction—requiring the defendants to vacate the Lease Premises and to return possession to Mesa Fortune.

In its answer and a later-filed "Brief on Denying [Mesa Fortune's] Temporary Injunction," D & R asserted that Mesa Fortune was not entitled to a temporary injunction. D & R claimed that it was "the record owner" of the Lease Premises, not

SCF, and that Shaik had conveyed the property to D & R, along with the Lease Agreement between Shaik and Mesa Fortune.

D & R asserted that Mesa Fortune had defaulted under the Lease Agreement because it had not paid rent for several months. D & R stated that Mesa Fortune had "made no attempts to cure the default; instead, [Mesa Fortune had] filed a Petition for a Writ of Re-entry in Justice of Peace Court," which the justice court denied on August 16, 2021. D & R claimed that, after Mesa Fortune was given termination and lockout notices as required by Texas law, the lease was terminated on August 17, 2021. D & R claimed that, the following day, it had entered into a valid lease agreement with Fuel 2 Go.

D & R asserted that the trial court lacked subject-matter jurisdiction to issue a temporary injunction awarding possession of the Lease Premises to Mesa Fortune. According to D & R, only a justice of the peace court has jurisdiction "[to] decide matters of immediate possession." D & R also argued that the injunctive relief should be denied because Mesa Fortune's Lease Agreement for the Lease Premises had been terminated under its terms and it had a valid lease with Fuel 2 Go.

The trial court conducted an evidentiary hearing on Mesa Fortune's application for a temporary injunction. Following the hearing, the trial court signed an order granting the temporary injunction. In its order, the trial court found that,

7

"after examining the pleadings, affidavits, exhibits, and testimony," there was evidence:

    a.    that there is a dispute regarding ownership and regarding who has the authority to receive rents under the lease and to exercise the terms of the Lease Agreement. There is also a dispute as to who has the authority to issue and/or enter into any new lease agreements and to lease the property;

    b.    that to return the parties to the last peaceable status quo [Mesa Fortune] is the Tenant under the Lease Agreement and is entitled to immediate possession of the property at 8000 Mesa Dr., Houston, Texas 77028;

    c.    that [Fuel 2 Go, D & R, and other defendants, including Shaik] and any affiliated companies and entities and individuals are not entitled to possession of the Lease Premises and are not entitled to lease the premises until there is a further determination of ownership by this court or [another court];

    d.    that upon the instruction of Defendant SCF[,] owner of the Lease Premises, [Mesa Fortune] withheld rent from Defendant Shaik;

    e.    [Mesa Fortune] has a probable right of recovery.

The temporary injunction order required D & R, Fuel 2 Go, and other defendants, including Shaik, to:

    a.    immediately vacate the Lease Premises at 8000 Mesa Dr., Houston, Texas 77028, leaving behind all store inventory, cash and other property that was located on the Property on August 11, 2021;

    b.    immediately provide [Mesa Fortune] with all keys and passwords to computers and equipment;

    c.    take all action to return [to Mesa Fortune] full possession of the business as an ongoing operation and [D & R, Fuel 2 Go, and

other defendants] are prevented from locking [Mesa Fortune] out of the Lease Premises absent judicial process;

d.    not interfere with [Mesa Fortune's] right to possession of the Lease Premises absent judicial process;

e.    not prevent [Mesa Fortune] or its employees, agents, or customers from accessing the Lease Premises absent judicial process; and

f.    not harass, intimidate, or threaten [Mesa Fortune], its employees, or customers while on the Lease Premises or the common areas of the Lease Premises.

The trial court also ordered Mesa Fortune "to deposit all back rents and any future rents due into the registry of the Court and to continue to pay rents into the registry of the Court until further order of this Court."

Fuel 2 Go and D & R now appeal the order granting the temporary injunction. On appeal, Fuel 2 Go and D & R each filed its own brief. Fuel 2 Go raises four issues, and D & R raises the same four issues, plus a fifth issue.[5] No other defendants appeal the order.

---

[5]    As discussed in greater detail below, the temporary injunction hearing was electronically recorded, and Appellants have not filed a transcription of the recording despite representations in their briefs that one would be filed. *See* TEX. R. APP. P. 38.5(a)(1) (providing that, in cases where proceedings were electronically recorded, party must, "[a]t or before the time a party's brief is due. . . file one copy of an appendix containing a transcription of all portions of the recording that the party considers relevant to the appellate issues or points"); *id.* R. 38.5(b) ("The appellate court need not review any part of the electronic recording.").

## Jurisdiction

In their first issue, D & R and Fuel 2 Go (together, Appellants) argue that, because justice courts have exclusive jurisdiction to determine issues of immediate possession, the trial court—a district court—lacked subject-matter jurisdiction to award possession of the Lease Premises to Mesa Fortune. Questions of jurisdiction are questions of law, which we review de novo. *See State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2006).

Appellants point out that, when the temporary injunction order was issued, a justice court had already denied Mesa Fortune's petition to reenter the Lease Premises under Property Code Chapter 93. Section 93.002 of that chapter provides that a commercial landlord "may not intentionally prevent a tenant from entering the leased premises except by judicial process" unless the exclusion from the property results from one of three circumstances, including "changing the door locks of a tenant who is delinquent in paying at least part of the rent." *See* TEX. PROP. CODE § 93.002(c)(3). If a landlord changes the door lock of a delinquent tenant, the landlord "must place a written notice on the tenant's front door stating the name and the address or telephone number of the individual or company from which the new key may be obtained." *Id.* § 93.002(f). If the tenant pays the delinquent rent, then the landlord must provide a new lock to the tenant "during the tenant's regular business hours." *Id.* If a landlord locks a tenant out in violation of section 93.002, the tenant

10

may "either recover possession of the premises or terminate the lease" and may recover certain monetary damages. *Id.* § 93.002(g).

Property Code section 93.003 provides that, "[i]f a landlord has locked a tenant out of leased premises in violation of Section 93.002, the tenant may recover possession of the premises as provided by this section." *Id* § 93.003(a). "The tenant must file with the justice court in the precinct in which the rental premises are located a sworn complaint for reentry, specifying the facts of the alleged unlawful lockout by the landlord or the landlord's agent." *Id.* § 93.003(b). In addition, the tenant must "state orally under oath to the justice the facts of the alleged unlawful lockout." *Id.* If the tenant meets the specified procedural requirements, "and if the justice reasonably believes an unlawful lockout has likely occurred, the justice may issue, ex parte, a writ of reentry that entitles the tenant to immediate and temporary possession of the premises, pending a final hearing on the tenant's sworn complaint for reentry." *Id.* § 93.003(c).

Here, Mesa Fortune acknowledges that, after it was locked out of the Lease Premises, it filed a petition in justice court seeking a writ of reentry, which the justice court denied. Mesa Fortune then filed this lawsuit in district court for conversion, trespass, and declaratory judgment. Mesa Fortune sought a temporary injunction to maintain the status quo—that is, to regain possession of the Lease Premises— pending a trial on the merits of its claims.

11

Appellants correctly assert that, under the Property Code, a justice court has exclusive jurisdiction over suits for reentry filed by commercial tenants to regain possession of a leased premises after an unlawful lockout by its landlord. *See* TEX. PROP. CODE § 93.003(b); *In re Vasos*, No. 01-17-00841-CV, 2018 WL 1954164, at *3 (Tex. App.—Houston [1st Dist.] Apr. 26, 2018, orig. proceeding) (mem. op.). And, under Chapter 24 of the Property Code, a justice court has exclusive jurisdiction over suits for forcible entry and detainer. *See* TEX. PROP. CODE § 24.004(a); *Young v. Tex. First Bank*, No. 01-08-00835-CV, 2010 WL 1492296, at *3 (Tex. App.—Houston [1st Dist.] Apr. 15, 2010, pet. denied) (mem. op.). "However, a justice of the peace court does not have exclusive jurisdiction over all cases that require a determination of the right of possession of real property." *Norton v. Phan*, No. 03-22-00002-CV, 2023 WL 4769530, at *3 (Tex. App.—Austin July 27, 2023, no pet.) (mem. op.); *see Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 919 (Tex. 2013) (recognizing that eviction suit "is not the exclusive means to obtain possession of one's property, but is in addition to any other available remedy"). District courts lack jurisdiction to adjudicate either eviction or reentry suits under the Property Code, but they otherwise have jurisdiction to award possession of real property. *See 2200 W. Alabama, Inc. v. Doc's Delight, L.L.C.*, No. 01-10-00364-CV, 2011 WL 2436288, at *3 (Tex. App.—Houston [1st Dist.] June 16, 2011, no pet.) (mem. op.); *see also Norton*, 2023 WL 4769530, at *3 (holding

12

that "trespass claim requiring a determination of the right of possession of property and the grant of an injunction did not divest the district court of jurisdiction because it was not a Chapter 24 eviction case"); *Breceda v. Whi*, 224 S.W.3d 237, 240 (Tex. App.—El Paso 2005, no pet.) (affirming district court's grant of temporary injunction barring interference with enjoyment of real property).

In the trial court, Mesa Fortune did not seek to adjudicate its right to regain possession of the Lease Premises under Property Code Chapters 24 or 93. While it filed this suit after it was locked out of the Lease Premises, Mesa Fortune did not assert that it was entitled to possess the Lease Premises on the ground that Shaik or D & R, as its landlord, violated the lockout provisions of section 93.002—a requirement to obtain reentry after a landlord's lockout of a tenant under Chapter 93. *See* TEX. PROP. CODE § 93.003. Instead, Mesa Fortune's suit and its claimed entitlement to possession of the Lease Premises turns on its assertion that it has no landlord-tenant relationship with Shaik or D & R because they lack title to the property and, along with D & R's alleged tenant Fuel 2 Go, have no right to possess the Lease Premises. Mesa Fortune asserts that it has the right to possess the property under its lease, which was transferred to SCF—the true title holder of the Lease Premises. These assertions underpin Mesa Fortune's declaratory judgment and trespass claims and the associated injunctive relief to return possession of the Lease

13

Premises to Mesa Fortune.[6] Mesa Fortune's suit seeking injunctive relief against the alleged defendant-trespassers is a distinct proceeding from a reentry suit against a landlord under Chapter 93.[7] *See Norton*, 2023 WL 4769530, at *3 (concluding that "evictions under Chapter 24 involving a holdover tenant and trespass suits requesting an injunction for a trespasser are distinct proceedings").

As Mesa Fortune points out, justice courts do not have jurisdiction to determine title to property. *See* TEX. GOV'T CODE § 27.031(b)(4). As a result, "when there is a genuine issue of title so intertwined with the issue of possession that the justice court cannot decide the issue of possession without first deciding the title issue, then the justice court lacks jurisdiction over the suit." *Flowers v. Invest Home*

---

[6] As mentioned, Mesa Fortune also asserts a claim for conversion related to the alleged taking of its personal property, namely, its cash and inventory. *See Medic Pharmacy, LLC v. AVK Properties, LLC*, No. 01-21-00447-CV, 2022 WL 2347923, at *5 n.1. (Tex. App.—Houston [1st Dist.] June 30, 2022, no pet.) (mem. op.) ("[C]onversion involves a wrongful exercise of control over the *personal* property of another."); *Corral-Lerma v. Border Demolition & Env't Inc.*, 467 S.W.3d 109, 124 (Tex. App.—El Paso 2015, pet. denied) ("Texas does not recognize conversion claims for real property.").

[7] Appellants also assert that the temporary injunction order is an improper collateral attack on the justice court's judgment denying the petition for writ of reentry. "A collateral attack seeks to avoid the binding effect of a judgment in order to obtain specific relief that the judgment currently impedes." *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272 (Tex. 2012). Here, Mesa Fortune does not seek to avoid the binding effect of the justice court's judgment, which denied Mesa Fortune's Chapter 93 petition for reentry. As discussed, here, Mesa Fortune sought possession through injunctive relief supported by claims for declaratory judgment and trespass—claims that are distinct from a Chapter 93 reentry claim.

*Pro*, No. 01-21-00413-CV, 2023 WL 138870, at \*2 (Tex. App.—Houston [1st Dist.] Jan. 10, 2023, no pet.) (corrected mem. op.) (internal quotation marks omitted).

Here, as reflected in the parties' pleadings, "a genuine issue of title [is] so intertwined with the issue of possession" that the issue of possession cannot be decided without first deciding the title issue. *See id.* Integral to the adjudication of Mesa Fortune's claims—and whether Mesa Fortune is entitled to possession—is the disputed issue of which entity, D & R or SCF, has title to the Lease Premises. Resolution of that issue will determine which party had a landlord-tenant relationship with Mesa Fortune at the time of the lockout and whether Mesa Fortune remains entitled to possession of the Lease Premises under the Lease Agreement. In other words, the disputed issue of ownership and the nature of the parties' relationships must necessarily be resolved before the right of possession of the Lease Premises can be determined. Unlike justice courts, district courts—such as the trial court—have jurisdiction to adjudicate possession *and* title to real property. *See Young*, 2010 WL 1492296, at \*3. Thus, based on the claims in this suit, we conclude that the trial court had jurisdiction to issue the temporary injunction order giving possession of the Lease Premises to Mesa Fortune.[8]

---

[8] Appellants also complain about the TROs, which returned possession of the Lease Premises to Mesa Fortune before the temporary injunction was granted. Appellants contend that the initial TRO was improperly extended three times. They also complain that the TROs improperly gave possession of the Lease Premises to Mesa Fortune when the justice court had already decided the issue of immediate

We overrule Appellants' first issue.

## Res Judicata

In their second issue, Appellants contend that the justice court's judgment denying Mesa Fortune's petition for writ of reentry was "res judicata as to the matter of possession." We agree with Mesa Fortune that neither the trial court nor this Court may consider the affirmative defense of res judicata in a temporary injunction proceeding.

Res judicata, or claim preclusion, bars the re-litigation of claims that have been finally adjudicated or that could have been litigated in the prior action. *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 750 (Tex. 2017). The party asserting it must prove (1) a prior final determination on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them;

---

possession in the suit for reentry. While an interlocutory appeal from an order granting a temporary injunction is authorized by Civil Practice and Remedies Code section 51.014(a)(4), no statutory provision authorizes an appeal from the grant of a TRO. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(4); *Nikolouzos v. St. Luke's Episcopal Hosp.*, 162 S.W.3d 678, 680–81 (Tex. App.—Houston [14th Dist.] 2005, no pet.). "Moreover, appellate courts are prohibited from deciding moot controversies." *S&B Hot Mess Enters., LLC v. City of Dall.*, No. 05-20-00502-CV, 2020 WL 3989499, at *1 (Tex. App.—Dallas July 15, 2020, no pet.) (mem. op.) (citing *Camarena v. Tex. Employment Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988)). "Temporary restraining orders . . . become moot when they become inoperative because they have expired." *Id.* (citing, inter alia, *Arvol D. Hays Constr. Co. v. R & M Agency Corp.*, 471 S.W.2d 628, 629 (Tex. App.—Fort Worth 1971, writ ref'd n.r.e.) (holding that temporary restraining order rendered moot once it expired)). Here, the initial TRO and its extensions have expired. Thus, the TROs are moot, and this Court lacks jurisdiction to review them. *See id.*

and (3) a second action based on the same claims as were or could have been raised in the first action. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

Res judicata is an affirmative defense under Rule of Civil Procedure 94 and is a plea in bar. *See* TEX. R. CIV. P. 94; *Tex. Highway Dep't v. Jarrell*, 418 S.W.2d 486, 488 (Tex. 1967) (stating res judicata is plea in bar). As a plea in bar, res judicata "should ordinarily be raised through a motion for summary judgment or proven at trial." *Grossman v. City of El Paso*, 642 S.W.3d 85, 110 (Tex. App.—El Paso 2021, review dism'd); *see Magellan Terminal Holdings, L.P. v. Vargas*, No. 13-19-00354-CV, 2021 WL 79351, at *3 (Tex. App.—Corpus Christi Jan. 7, 2021, no pet.) (mem. op.). "By challenging a party's right to recover, a plea in bar reaches the merits of a case." *Grossman*, 642 S.W.3d at 110 (citing *Vargas*, 2021 WL 79351, at *3).

A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). A temporary injunction proceeding may not be used to obtain an advance ruling on the merits. *Iranian Muslim Org. v. City of San Antonio*, 615 S.W.2d 202, 208 (Tex. 1981); *Stewart Beach Condo. Homeowners Ass'n, Inc. v. Gili N Prop Invests.*, 481 S.W.3d 336, 346 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

Because a plea in bar reaches the merits of a case, neither a trial court nor this Court in reviewing the trial court's temporary injunction order may consider the

defense of res judicata. *See DeVilbiss v. West*, 600 S.W.2d 767, 768 (Tex. 1980) (holding that trial court erred by considering res judicata defense at temporary injunction hearing and that appellate court erred by reviewing merits of res judicata defense on appeal); *Grossman*, 642 S.W.3d at 111 (declining to address appellant's "res judicata argument, and all other claims based on prior litigation, given these attacks all challenge[d] the merits of the case and exceed[ed] [court's] jurisdictional limit" in appeal from temporary injunction); *Vargas*, 2021 WL 79351, at *3 (concluding "that the trial court did not err in granting the temporary injunction without considering whether [appellee's] suit was barred by collateral estoppel" because such ruling "would impermissibly reach the merits of the case"). This limitation prevented the trial court from considering Appellants' res judicata defense when ruling on Mesa Fortune's temporary injunction application and prevents this Court from considering the defense in this interlocutory appeal.[9] *See DeVilbiss*, 600 S.W.2d at 768; *Grossman*, 642 S.W.3d at 111; *Vargas*, 2021 WL 79351, at *3.

We overrule Appellants' second issue.

---

[9] We note that Appellants have not cited where in the record they raised the defense of res judicata in the trial court. "Unlike subject-matter jurisdiction, res judicata is an affirmative defense that must be pleaded or else it is waived." *Pruneda v. Granados*, No. 01-20-00043-CV, 2021 WL 2231267, at *12 (Tex. App.—Houston [1st Dist.] June 3, 2021, no pet.) (mem. op.). Thus, even if we could consider the defense, Appellants may not raise res judicata for the first time on appeal. *See id.*

**Entire Object of Suit Not Accomplished**

In their third issue, Appellants argue that the trial court erred by granting the temporary injunction because, in rendering the order, the trial court adjudicated "contested matters of title, contract, and possession," thereby inappropriately "adjudicate[ing] the entire case without a trial on merits." We disagree.

As discussed, the temporary injunction order required Appellants, Shaik, and other defendants (1) to vacate the Lease Premises; (2) to turn over the keys and computer passwords to Mesa Fortune; (3) to return possession of the convenience store business to Mesa Fortune; (4) to refrain from locking out Mesa Fortune absent judicial process; (5) to not interfere with Mesa Fortune's right to possess the Lease Premises; and (6) to refrain from preventing Mesa Fortune or its employees, agents, or customers from accessing the premises absent judicial process. Appellants correctly point out that a court should not grant a temporary injunction if the effect of granting it accomplishes "the object of the suit" *Tex. Foundries, Inc. v. Int'l Moulders & Foundry Workers' Union*, 248 S.W.2d 460, 464 (Tex. 1952). To do so, "would be to determine rights without a trial." *Id.*

Here, Appellants' argument that the temporary injunction order accomplished the entirety of Mesa Fortune's suit "fails to consider the number and variety of the causes of action pleaded by [Mesa Fortune] and the scope of the relief sought in [Mesa Fortune's] live pleadings." *See Matter of Bumstead Family Irrevocable Tr.*,

No. 13-20-00350-CV, 2022 WL 710159, at *19 (Tex. App.—Corpus Christi Mar. 10, 2022, pet. denied) (mem. op.). By issuing the temporary injunction order, the trial court did not dispose of Mesa Fortune's conversion or trespass claims, nor did it dispose of the numerous declarations sought by Mesa Fortune, including those regarding which party owned the Lease Premises. Thus, the order did not accomplish the entirety of Mesa Fortune's suit as Appellants argue. *See id.*; *see also Kirkland v. Kirkland*, No. 02-22-00469-CV, 2023 WL 3643642, at *9 (Tex. App.—Fort Worth May 25, 2023, no pet.) (mem. op.) (rejecting appellant's argument that temporary injunction order granted appellee "ultimate relief" he sought where order did not dispose of appellee's counterclaim for breach of contract or "dispose of his request for numerous declarations").

We overrule Appellants' third issue.

## Status Quo

In Appellants' respective fourth issues and D & R's fifth issue, which raise interrelated arguments, Appellants contend that the temporary injunction order did not properly preserve the status quo. They also contend that "mandatory temporary injunctions normally should not be used to transfer peaceable possession of property."

As noted, a temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru*, 84 S.W.3d at 204.

The "status quo" is defined as "the last, actual, peaceable, non-contested status [that] preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (orig. proceeding).

In its order, the trial court found that, based on "the pleadings, affidavits, exhibits and testimony," there was evidence that "to return [the] parties to the last peaceable status quo" Mesa Fortune would be "the Tenant under the Lease Agreement . . . entitled to immediate possession of the [Lease Premises]." Consistent with the finding, the trial court ordered possession of the Lease Premises to be returned to Mesa Fortune and ordered the defendants not to interfere with that possession.

On appeal, Appellants assert that the status quo was the period after Mesa Fortune was locked out of the Lease Premises during which Fuel 2 Go claimed possession of the property as lessee under a purported lease agreement with D & R. Appellants argue that the trial court "misapplied the premise of restoring the status quo when it was not possible to restore the status quo between [Mesa Fortune] and its landlord without interfering and disrupting the contractual rights" of D & R and Fuel 2 Go in their purported lease agreement. D & R asserts that the temporary injunction order "put[s] [it] in a Catch-22 position . . . whereby its compliance with the temporary injunction will force a breach in its [lease agreement] with Fuel 2 Go, thereby changing the status quo between the parties."

21

The law is well-established that, "[i]f an act of one party alters the relationship between that party and another, and the latter contests the action, the status quo cannot be the relationship as it exists *after* the action." *Benavides Indep. Sch. Dist. v. Guerra*, 681 S.W.2d 246, 249 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.). "If it were otherwise, the granting of an injunction would be rendered impossible." *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 577 (Tex. App.—Austin 2000, no pet.) (citing *Guerra*, 681 S.W.2d at 249). Here, Shaik's conduct, on behalf of D & R, of locking Mesa Fortune out of the Lease Premises altered the relationship between the parties, and Mesa Fortune contested that action. Thus, the status quo cannot be the state of affairs after the lockout as Appellants claim. *See Guerra*, 681 S.W.2d at 249.

During the last actual, peaceable, and uncontested state of affairs—that is, the state of affairs before the lockout—Mesa Fortune was the tenant under the Lease Agreement in possession of the Lease Premises. A dispute over the legitimacy of the lockout precipitated the underlying lawsuit. To preserve the status quo, then, required preserving the state of affairs that existed before the lockout. In other words, preservation of the status quo required giving Mesa Fortune possession of the Lease Premises as the premise's tenant until the dispute over the property's possession and issues related to possession, such as ownership, could be finally decided at trial. In the temporary injunction order, that is exactly what the trial court did.

22

Appellants point to *Great Southern Life Insurance v. Tinsley* in which this Court recognized that "[m]andatory temporary injunctions normally will not be used to transfer peaceable possession of property." 1986 WL 11660, at *2 (Tex. App.—Houston [1st Dist.] Oct. 16, 1986, no writ) (op. on reh'g) (unpublished) (citing *Tex. Co. v. Watkins*, 82 S.W.2d 1079, 1080 (Tex. App.—Waco 1935, no writ)). There, we also stated that, "[b]ecause one of the claims in [the] suit involve[d] possession of property," the temporary injunction requiring the appellant to transfer the property—namely, insurance policy information—to the appellee "should have issued only to preserve the status quo." *Id.* Because we concluded that the last uncontested peaceable possession of the policy information was with the appellant, not with the appellee, the trial court had abused its discretion by requiring the appellant to turn the policy information over to the appellee. *Id.* In contrast, here, the last uncontested peaceable possession of the Lease Premises was with Mesa Fortune, thus supporting the trial court's order requiring possession of the premises be transferred back to Mesa Fortune.

We are mindful that the Supreme Court of Texas has recognized that, while "a preliminary injunction" should not be used "to transfer the possession of land from one person to another pending an adjudication of title," an injunction can issue to retore possession when the land was "forcibly or fraudulently obtained by the defendants, . . . the equities are such as to require that the previous possession thus

23

wrongfully invaded be restored, and the original status of the property [needs to be] preserved pending the decision of the issue of title." *Story v. Story*, 176 S.W.2d 925, 927 (Tex. 1944). Here, Mesa Fortune alleged that D & R and Fuel 2 Go obtained possession of the Lease Premises by "force" during the lockout process and that Mesa Fortune would be irreparably injured if the original status of the property— that is, Mesa Fortune's possession of the property—was not restored.

To show that it was error for the trial court to order transfer of possession of the Lease Premises because it was real property, Appellants had the burden to bring forward an appellate record showing reversible error. *See Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990). As mentioned in footnote 5, Appellants have failed to file portions of the record from the temporary injunction hearing.

The hearing was not stenographically recorded; instead, it was electronically recorded. *See* TEX. R. APP. P. 34.6(a)(2). The Rules of Appellate Procedure state that, when proceedings are electronically recorded, a party "must file one copy of an appendix containing a transcription of all portions of the recording that the party considers relevant to the appellate issues or points." *Id.* R. 38.5(a)(1).

Neither D & R's nor Fuel 2 Go's brief had an appendix with a transcription of any portion of the temporary injunction hearing. However, each stated in its respective brief that "[a] properly authenticated transcript of the relevant testimony from the underlying proceeding, including any exhibits offered in evidence, as

provided by the court reporter, [would] be supplemented." The court reporter filed the audio recording of the hearing and the parties' exhibits, but, despite the representations in their briefs, neither D & R nor Fuel 2 Go supplemented its appendix with a transcript of the testimony from the hearing. In its responsive brief, Mesa Fortune pointed out the transcript's omission and asserted that the missing portion of the record required a presumption that "the omitted evidence supports the trial court's order." Neither D & R nor Fuel 2 Go filed a reply brief responding to Mesa Fortune's brief.

When, as here, an appellant fails to file a transcription in its appendix, an appellate court is not required to review any part of the electronic recording. *See id.* R. 38.5(b). Instead, "[t]he same presumptions that apply to a partial reporter's record under Rule 34.6(c)(4) apply to the parties' appendixes." *Id.*

Rule of Appellate Procedure 34.6(c)(1) requires an appellant who requests a partial reporter's record to include a statement of points or issues to be presented on appeal; the appellant is then limited to those points or issues. *Id.* R. 34.6(c)(1). When an appellant properly requests a partial reporter's record under Rule 34.6(c), an appellate court must presume that the partial reporter's record constitutes the entire record for purposes of reviewing the stated points or issues. *Id.* R. 34.6(c)(4). However, nothing in Rule 34.6(c) relieves an appellant of its ultimate burden to bring

forth a record showing reversible error. *Garcia v. Sasson*, 516 S.W.3d 585, 590 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

"If properly complied with, Rule 34.6(c) prevents the application of the general presumption that any missing portions of the record support the trial court's judgment; instead, we presume that the partial record includes all portions of the record relevant to the stated points or issues on appeal." *Nigerian Found. v. Umezulike*, No. 01-20-00262-CV, 2022 WL 2923202, at \*5 (Tex. App.—Houston [1st Dist.] July 26, 2022, no pet.) (mem. op.). But, in the absence of a statement of appellant's issues to be presented on appeal, we must presume that the omitted portions of the record are relevant and support the trial court's judgment. *Garcia*, 516 S.W.3d at 591; *see Bennett v. Cochran*, 96 S.W.3d 227, 230 (Tex. 2002) (recognizing that, absent complete record on appeal, court of appeals must presume that omitted items support trial court's judgment).

Here, the record contains only the exhibits from the temporary injunction hearing. Appellants have not filed a transcript containing the testimony of the witnesses who testified. Nor have Appellants complied with Rule 34.6(c)'s requirements for filing a partial reporter's record. *See* Tex. R. App. P. 34.6(c). Accordingly, we must presume that the omitted portions of the record support the temporary injunction order, including a determination by the trial court that the evidence at the hearing supported the transfer of possession of the subject real

property—the Lease Premises. *See Vargas*, 2021 WL 79351, at \*4 (presuming that missing testimony of two witnesses from temporary injunction hearing supported temporary injunction order when appellants failed to comply with Rule 34.6(c)'s requirements); *Hale v. Hospice at the Tex. Med. Ctr.*, 96 S.W.3d 688, 690 (Tex. App.—Beaumont 2003, no pet.) (presuming that evidence supported trial court's judgment because appellant failed to file appendix containing transcript of electronically recorded trial court proceedings as required by Rule 38.5); *see also Bennett*, 96 S.W.3d at 229 ("There is no question that, had [the appellant] completely failed to submit his statement of points or issues, Rule 34.6 would require the appellate court to affirm the trial court's judgment.").

We overrule Appellants' fourth and fifth issues.

## Conclusion

We affirm the order of the trial court granting the temporary injunction.


Richard Hightower
Justice

Panel consists of Justices Kelly, Hightower, and Countiss.